OPINION OF THE COURT
Dan Lamont, J.
Petitioner father brings this proceeding seeking physical custody of his 11-year-old son Kevin, who presently resides with his mother, the respondent herein.
In April of 1978 — when the parties were still married, but living separate and apart — a custody hearing was conducted in the Schoharie County Family Court, before Judge Robert H. Ecker. During such prior custody proceeding and hearing, the undersigned (then a practicing attorney) served as Law Guardian for the three children, including Kevin.
As Law Guardian, the undersigned conferred with each of the three children separately at his office, interviewed the parents, participated in the hearing, and was present in chambers when the Judge interviewed the children individually. At the conclusion of the hearing, Judge Ecker — by order dated April 17, 1978 — granted joint custody of the three children to the parties and provided that Elaine and Kevin would continue to reside with their mother and that Edward, Jr., would continue to reside with *256 his father — as had been previously voluntarily agreed by the parents — with free visitation between all children and their parents.
Subsequently, the petitioner, and respondent herein entered into a written separation agreement providing for joint custody of the children and were legally divorced by judgment of Supreme Court, Schoharie County, entered February 23,1979, such judgment incorporating the terms of the separation agreement, which do not merge therein.
The custody petition herein alleges, inter alia, that Kevin now wishes to live with his father and older brother. On April 1,1981, petitioner and respondent in this custody proceeding appeared before the undersigned. Respondent, through counsel, indicated that she contests petitioner’s request for physical custody of Kevin. The parties consented to evaluations of both parents and of Edward, Jr., and Kevin at the Schoharie County Mental Health Clinic, and they also consented to home studies by the Schoharie County Probation Department. Pursuant to section 249 of the Family Court Act, a Law Guardian was appointed for the child, Kevin, but such Law Guardian has not yet formally appeared before the court.
The undersigned informed the petitioner and respondent on the record that upon the request of either party, he would disqualify himself because of his prior involvement as Law Guardian in the case. Neither party raised any objection to the undersigned hearing and determining this custody case.
Subsequent to April 1, 1981, the undersigned has had occasion to read section 14 of the Judiciary Law which provides, in part, as follows: “A judge shall not sit as such in, or take any part in the decision of, an action, claim, matter, motion or proceeding *** in which he has been attorney or counsel”.
Upon the court’s own motion and initiative, the undersigned hereby finds that the aforesaid section mandates his disqualification.
As Law Guardian in the prior custody proceeding, the undersigned clearly served as counsel for the children in a similar proceeding involving the very same parties and *257 issues. Section 241 of the Family Court Act expressly provides that “counsel is often indispensible to a practical realization of due process of law” and that “minors * * * often require the assistance of counsel to help protect their interests and to help them express their wishes to the court.” In April, 1978, the undersigned, as Law Guardian, attempted to fulfill such function to the best of his ability.
Although the best interest of the child constitutes the ultimate issue and concern in any custody matter — both for the Law Guardian and the presiding Judge, the Law Guardian does in fact have a client whom he represents; therefore, section 14 of the Judiciary Law clearly mandates that any Judge who has previously participated as Law Guardian in the same proceeding must disqualify himself.
The undersigned, notwithstanding the prior proceedings, has absolutely no preconceived notions in this case, for or against either party. Were disqualification simply a matter of judicial and personal conscience, the undersigned “three-hatted” Judge would hesitate to disqualify himself, because of the unavoidable delay and inconvenience to litigants caused when the only sitting Judge in this county cannot preside.
However, statutes requiring disqualification on the basis of interest or bias are jurisdictional in nature, and the parties may not even consent that a Judge sit as such on a case when the Judge is disqualified by operation of a statute (Oakley v Aspinwall, 3 NY 547, 550; Casterella v Casterella, 65 AD2d 614; Queens-Nassau Mtge. Co. v Graham, 157 App Div 489).
Section 14 of the Judiciary Law is in part directed at protecting innocent litigants; however, its primary purpose is the preservation of the dignity of the judiciary. (Murray v Murray, 73 AD2d 1015; Casterella v Casterella, supra, p 615.) The Appellate Division, Third Department, has recently held that where an appearance of improper judicial interest emerges, the integrity of the judiciary requires that the Judge disqualify himself. (Murray v Murray, supra, p 1015.) In the Murray case, the court stated (p 1016): “The Trial Judge is confronted by a sensitive situation. No matter what the outcome of the case and the ultimate *258 fairness of [the] judgment, the integrity of the court will be called into question because of *** doubt[s] as to the Judge’s impartiality.”
When considered in the context of this case — wherein an appearance of improper interest could arise in the eyes of the unsuccessful party, or even in the eyes of the child (former client) if his wishes were not followed — the ultimate purpose and objective of the statute to preserve the integrity and dignity of the judiciary becomes manifest and is readily understandable.
In such case, the Judge should disqualify himself (see Corradino v Corradino, 48 NY2d 894), and not await the motion of any party, which motion might not be forthcoming.