**CITY OF GRAND FORKS, a municipal corporation; Richard A. Ohlsen, on behalf of himself and all others similarly situated, Plaintiffs and Appellants,**

v.

**MIK–LAN RECREATION ASSOCIATION, INC., a North Dakota non-profit corporation; Botsford and Rice, Inc.; and all persons having or claiming an estate or interest in, or lien or encumbrance upon, the property described in the Complaint, Defendants,**

**and**

**The Unsecured Creditors Committee of the Estate of Paul S. Symington, Debtor in Bankruptcy, Defendant and Appellee.**

**The UNSECURED CREDITORS COMMITTEE OF the ESTATE OF Paul S. SYMINGTON, Debtor in Bankruptcy, Plaintiff and Appellee,**

v.

**MIK–LAN RECREATION ASSOCIATION, INC., a North Dakota Non–Profit Corporation, Defendant,**

**and**

**City of Grand Forks, and Richard A. Ohlsen, on behalf of himself and all others similarly situated, Appellants.**

**Civ. Nos. 870148, 870240.**

Supreme Court of North Dakota.

March 29, 1988.

Howard D. Swanson, Grand Forks, for plaintiff and appellant City of Grand Forks.

Ralph F. Carter of Mack, Moosbrugger, Ohlsen, Dvorak & Carter, Grand Forks, for plaintiff and appellant Richard A. Ohlsen.

Raymond J. German of German & Neil, East Grand Forks, Minn., for defendant and appellee.

VANDE WALLE, Justice.

The City of Grand Forks and Richard A. Ohlsen, on behalf of himself and all others similarly situated, appealed from two orders denying their motions for relief from a default judgment under Rule 60(b), N.D.R. Civ.P. We reverse and remand for further proceedings.

In December 1978, owners of condominium units in Liberty Estates Condominium "F" [Liberty Estates] executed a "Declaration and Covenant" [Covenant] which provided for the development and maintenance of a private park for the use of the residents and established a method for private assessments against the owners to repay the developer for the project. Paul S. Symington, an owner of several of the condominium units, also owned Lot "D" of the subdivision, which was to serve as the area for the park. Symington was also designated in the Covenant to be the developer of the park project.

Under the terms of the Covenant, the owners were to form and be members of a nonprofit corporation called Mik–Lan Recreation Association, Inc. [Mik–Lan]. The Covenant provided that Symington convey Lot "D" to Mik–Lan for $60,000 and that he develop the lot for recreational purposes "at a cost at least $80,000." The Covenant further provided that upon Symington's conveyance of the lot to Mik–Lan, it would execute a promissory note in the amount of $140,000 payable to Symington.[1] The Covenant also set forth a method for collecting assessments against the condominium owners to pay off the promissory note and fund operation and maintenance of the park, and provided that all assessments constituted a lien in favor of Mik–Lan. All but one of the condominium owners signed the Covenant.

Mik–Lan was incorporated on January 5, 1979, and pursuant to the terms of the Covenant, Symington, Ohlsen, and Neil Hensrud were listed in the Articles of Incorporation as the initial members of the board of directors. Symington was also listed as the initial registered agent of the corporation. No subsequent election or appointment of directors took place, nor were any annual meetings held.

In 1982 Symington filed for bankruptcy. According to counsel, the bankruptcy court assigned to the Unsecured Creditors Committee of the bankruptcy estate [Creditors] Symington's interest in the proceeds of the assessments from the condominium owners for the park property and improvements. On August 1, 1985, the Creditors brought suit[2] against Mik–Lan by serving a summons and complaint upon Symington as the registered agent of the corporation. The complaint sought $120,000 which was allegedly owed to Symington under the Covenant for the park land and his services performed on it. Symington did not inform the other directors of Mik–Lan or any of the affected condominium owners that he had been served with the complaint. Neither Symington nor Mik–Lan responded to the complaint, and on October 17, 1985, a default judgment in the amount of $120,000 was entered against Mik–Lan. During December 1985, the district court appointed a trustee to act as receiver for Mik–Lan and collect and disburse past-due and current private park assessments pursuant to the terms of the Covenant.

In January 1986, the City of Grand Forks, which had become record title owner of 49 lots in the subdivision as a result of nonpayment of real estate taxes by the

1. The record reflects that Symington conveyed Lot "D" to Mik–Lan on December 19, 1985, approximately two months after the district court granted the default judgment. It is unclear from the record whether Mik–Lan ever executed a promissory note payable to Symington.

2. The plaintiffs have not asserted that the Unsecured Creditors Committee, as an unincorporated association, does not have the capacity in general to bring suit. See generally *Askew v. Joachim Memorial Home*, 234 N.W.2d 226 (N.D. 1975).

developer, received from the court-appointed receiver a request for payment of more than $61,000 to release all liens or encumbrances against its lots because of the private park assessment. According to counsel, the receiver also sent letters to the other condominium owners advising them of the amount of their individual assessments.

In February 1986, Richard Ohlsen, on behalf of himself and all others similarly situated,[3] filed a quiet-title action against Mik–Lan, the Creditors, and the receiver. The City of Grand Forks filed a similar action against the same parties in April 1986. These actions were ultimately consolidated, and in January 1987, the plaintiffs moved under Rule 60(b), N.D.R.Civ.P., for relief from the default judgment rendered in the Creditors' 1985 action against Mik–Lan. This motion was denied by the court, which concluded that service of process was valid and that the court therefore had jurisdiction to enter the default judgment.

In May 1987, the plaintiffs in the consolidated action moved the trial court for reconsideration of its order denying relief from the default judgment, and filed another motion for relief from the default judgment in the original action by the Creditors against Mik–Lan. The trial court denied the motions, and these appeals followed.

Although the motions filed with the district court in this case were denominated only as Rule 60(b) motions, because they point out that the plaintiffs were not parties to the original lawsuit but are nevertheless affected by the default judgment and subsequent appointment of the receiver, we treat the motions as also requesting intervention pursuant to Rule 24, N.D.R.Civ.P.

In *Quick v. Fischer*, 417 N.W.2d 843, 845 (N.D.1988), we recently held that under limited circumstances a motion for intervention may be granted after entry of judgment:

"An application to intervene under NDRCivP 24 must be timely. A post-judgment motion is not necessarily untimely. 'Intervention after judgment is unusual and not often granted.' 3B, *Moore's Federal Practice* ¶ 24.13, p. 24–154 (1987). 'There is considerable reluctance on the part of the courts to allow intervention after the action has gone to judgment and a strong showing will be required of the applicant.' 7C, C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d*, § 1916, p. 444 (1986). 'The court must weigh the lapse of time in the light of all the circumstances of the case.' *Id.*, at 426...."

■ One situation in which intervention after judgment may be allowed is "where it is the only way to protect the intervener's rights; e.g., where the intervener would be bound by the judgment and the party purporting to represent him fails to appeal." 3B *Moore's Federal Practice* ¶ 24.13, at pp. 24–155—24–156 (1987). See also, *Pellegrino v. Nesbit*, 203 F.2d 463 (9th Cir.1953). Under the $120,000 default judgment, the plaintiffs are bound pursuant to the terms of the Covenant to pay that amount in assessments without any opportunity to litigate its validity. The peculiar circumstances of this case are sufficiently compelling to cause us to conclude that intervention should have been granted and that the trial court abused its discretion in refusing to grant the plaintiffs relief from the default judgment.

■ Although the first of the motions was not made until approximately one year after the plaintiffs received notice of their park assessments, and therefore presumably notice of the default judgment, we nevertheless believe the motions to have been timely made under the circumstances. The plaintiffs promptly instituted quiet-title actions within one to three months after receiving the assessments. The plaintiffs were understandably unsure of which legal avenue to pursue to attempt to challenge

---

3. The record does not reflect that Ohlsen's action has been certified as a class action pursuant to Rule 23(b), N.D.R.Civ.P. Accordingly, for the purposes of this appeal we treat Ohlsen's action as being brought in his individual capacity only.

the assessments. Prior to our decision in *Quick v. Fischer,* this court had not ruled that intervention could be sought after entry of judgment. The complex procedural history of this case establishes that the plaintiffs did not lack diligence in attempting to protect their rights.

The major difficulty in this case involves the method by which the Creditors accomplished service of process upon Mik–Lan. Symington's claim against Mik–Lan was assigned by the bankruptcy court to the Creditors. The Creditors instituted the suit by serving process on Symington as the registered agent of the corporation. See Rule 4(d)(2)(D), N.D.R.Civ.P. Symington did not inform the other directors or the condominium owners and judgment was entered by default.

It is well settled that service on an officer or agent of a corporation, who has an interest in the action or the claim antagonistic to the interest of the corporation, is invalid, although the officer or agent is otherwise a statutorily authorized person to receive service on behalf of the corporation. See 9 *Fletcher Cyclopedia Corporations* § 4425 (1985); Annot., 113 A.L.R. 9, 131 (1938); 19 Am.Jur.2d *Corporations* § 2203 (1986). Although the most obvious instance calling for the application of this principle is where the officer or agent who is served with process is the plaintiff in the action, the rule is also applicable to situations where the officer or agent accepting service is the assignor of the plaintiff's claim. See *Bishop v. Everson Mfg. Co.,* 50 F.Supp. 792 (S.D.N.Y.1943); *White House Mountain Gold Mining Co. v. Powell,* 30 Colo. 397, 70 P. 679 (1902); *Atwood v. Sault Ste. Marie Light, Heat & Power Co.,* 148 Mich. 224, 111 N.W. 747 (1907). Based primarily on the principle that a person may not do indirectly through the medium of an assignment that which he could not do directly, the rationale for the rule was further explained in *White House Mountain Gold Mining Co., supra,* 70 P. at 680:

> "It is his [agent of the corporation] claim for services that is sought to be collected. Naturally he would want plaintiff to recover, even if a failure imposed no legal liability on him, and it would be to

his interest to withhold from defendant the fact that the action was begun. We do not say that he did or would. But courts will not sanction a doctrine that would inevitably lead to fraud, and place an agent in a position where, as between his assignee and his principal, he cannot be true to one without being, in a measure, false to the other. To hold this service good would be as obnoxious to a fine sense of justice as to declare that service on a plaintiff gives the court jurisdiction of the person of defendant...."

Although Symington's claim against Mik–Lan was assigned to the Creditors by the bankruptcy court rather than by Symington himself, we do not view this factor as rendering the general principle inapplicable. While we do not intimate that any fraud was intended in this particular case, we conclude that service of process was invalid.

Although a party attacking a judgment as void under Rule 60(b)(iv) need show no meritorious claim or defense [11 Wright & Miller, *Federal Practice and Procedure* § 2862, at p. 197 (1973); 7 *Moore's Federal Practice* ¶ 60.25[2], at p. 60–224 (1987); see also, *Peralta v. Heights Medical Center, Inc.,* — U.S. —, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988)], we note that the plaintiffs in this case have made assertions which, at least on their face, present a meritorious defense to the underlying action. The plaintiffs have alleged, among other things, that they do not owe the entire $120,000 in assessments because the private park property was never developed "at a cost at least $80,000" as required by the terms of the Covenant.

We conclude that under the circumstances of this case the trial court erred in refusing to vacate the default judgment. Accordingly, the orders are reversed and the case is remanded for further proceedings.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.