**In the Matter of the ESTATE of Frank RISOVI, Deceased.**

**Appeal of Paul PUTNAM.**

**Civ. No. 870274.**

Supreme Court of North Dakota.

Sept. 20, 1988.

Nathanson & Wray, Chicago, Ill., for appellant; argued by Robyn E. Jennings. Appearance by Terry L. Adkins.

Lamb, McNair, Larson & Carlson, Ltd., Fargo, for appellee Personal Representative of the Estate of Frank Risovi; argued by Gregory L. Thompson.

MESCHKE, Justice.

Paul Putnam appealed from a county court ruling which "ratified" an Order and Amended Order Approving Settlement and Confirmation of Distribution of an Estate, arguing that they were void because the judge was disqualified. We reverse and remand for trial of Putnam's claim in the estate.

Frank Risovi executed a will in 1974, which created a trust for most of his property. Fern Kurtz, Risovi's daughter, was named trustee. The trust was to provide a lifetime income to Risovi's wife. After her death, the trustee was to terminate the trust and distribute the principal to herself, except for a $25,000 bequest to Paul Putnam. After this 1974 will, Risovi opened many bank accounts, all either payable on death to, or jointly with, his wife or daughter.

In 1985, Risovi signed his final will with trust provisions identical to the 1974 will. Risovi died on January 13, 1986. Nearly all of his property was in joint savings accounts with either his wife or daughter as the surviving joint owner on each account. The will was filed and application

made for informal probate. His daughter was appointed personal representative, letters testamentary were filed and notice to creditors was published. No inventory of the estate was filed with the court.

In September 1986, Putnam consulted Donovan Foughty, an attorney, questioning why the trust in Risovi's will was not funded. Foughty advised Putnam and billed him for services. Foughty wrote Putnam:

"I have investigated the Frank Risovi Estate and I have been told that all of his property was in joint tenancy and as a consequence that property passed outside of the estate. The trust that is referred to in Mr. Risovi's Will does not exist. It was never formed because there were no assets to place in it.

"This letter is notice to you that I will take no further action in this matter and that if you wish to pursue this action, you should contact legal counsel. From a practical standpoint, you should probably get someone from outside of town. If it is your intent to pursue this matter further, I would further suggest that you get someone immediately. Find enclosed a copy of the Risovi Will."

Kurtz petitioned for settlement and confirmation of distribution of the estate, reciting that the trust was not funded because all of the cash assets were in joint accounts. A hearing on her Petition was scheduled for November 7, 1986. A different attorney represented Putnam and attended the hearing to object to the Petition, arguing that amounts in joint accounts should be included in the trust by imposition of a constructive trust, if necessary. The then County Judge directed:

"I think that now what would be best served though is just putting a hold on this particular petition for a thirty-day period. I am going to allow then, Mr. Dittus, within that time frame to then advise the Court if there will be any other testimony offered on your position.

*I will in turn respond by either setting up another hearing date, if I am still able to do so as my tenure as judge, or we'll at least set up some ground rules for the submission of briefs or other legal authority.* ... Let's say we are going to put this on hold for thirty days in order to give Mr. Putnam and legal counsel the opportunity to advise the Court as to possible additional testimony or evidence being offered and/or legal authorities being provided to support their position." (emphasis added).

Kurtz was deposed on December 3, 1986 by an attorney for Putnam. The record does not show anything further happened until January 14, 1987, when Donovan Foughty, as the newly elected County Judge, entered an Order Approving Settlement and Confirmation of Distribution of the Estate. An Amended Order was signed by Judge Foughty on February 6.[1]

On April 7, 1987, Putnam moved to vacate the Order and Amended Order Approving Settlement and Confirmation of Estate. Putnam asserted that Judge Foughty should have disqualified himself from the matter because he had given legal advice to Putnam, and that certain joint accounts were intended to fund the trust. Judge Foughty recused himself and another county judge was assigned to the case.

A hearing on Putnam's motion to vacate was held. The assigned county judge ruled that the "evidence ... fail[ed] to sustain the burden of proof necessary to require the modification or vacation of the Amended Order," ordered that the Amended Order be "ratified," and denied Putnam's motion. Putnam appealed, arguing that the January Order and the February Amended Order, both signed by Judge Foughty, were void and that he should have a hearing on his claim.

We consider the effect of a judge's involvement in a case where he has given

---

1. The original Order said: "The personal representative has filed an inventory and appraisement of all property of the estate known to him." The Amended Order read: "The personal representative has prepared and delivered to the interested persons of this estate an inventory of the property owned by the decedent at the time of his death including the value of such property." However, the record does not include such an inventory. The Amended Order also corrected a reference to Risovi as having died intestate; he died testate.

legal advice about it to one of the parties before becoming a judge. Generally, prior legal advice to a party disqualifies a judge from acting in the same controversy. 46 Am.Jur.2d *Judges* § 185. "It is sufficient to disqualify a judge that he had given legal advice to a party in connection with the subject matter before litigation began; it is not necessary that he was connected with the particular matter as a pending suit." *Id.* at § 189. As the United States Supreme Court reiterated recently in a more difficult decision about judicial disqualification: "We must continuously bear in mind that 'to perform its high function in the best way "justice must satisfy the appearance of justice." ' " *Liljeberg v. Health Services Acquisition Corp.,* — U.S. ——, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988).

Our Rules of Judicial Conduct decree: "RULE 3. A JUDGE SHALL PERFORM THE DUTIES OF THE JUDICIAL OFFICE IMPARTIALLY AND DILIGENTLY

" . . . .

"C. Disqualification.

"(1) A judge's disqualification is appropriate when the judge's impartiality might reasonably be questioned, including but not limited to instances where:

"(a) a judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

"(b) *a judge served as lawyer in the matter in controversy,* or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

"(c) a judge, individually or as a fiduciary, or the judge's spouse or minor child residing in the judge's household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceedings;

"(d) a judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

"(i) is a party to the proceeding, or an officer, director, or trustee of a party;

"(ii) is acting as a lawyer in the proceeding;

"(iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

"(iv) is to the judge's knowledge likely to be a material witness in the proceeding;" (emphasis added).

The Rules of Judicial Conduct also say:

"D. Remittal of Disqualification. A judge disqualified by the terms of Rule 3C(1)(c) or Rule 3C(1)(d) may, instead of withdrawing from the proceeding, disclose on the record the basis of the disqualification. If, based on such disclosure, the parties and lawyers, independently of the judge's participation, all agree in writing that the judge's relationship is immaterial or that the judge's financial interest is insubstantial, the judge is no longer disqualified, and may participate in the proceeding. The agreement, signed by all parties and lawyers, shall be incorporated in the record of the proceeding."

■ We have not before decided at what point a judge should withdraw from a case in which he is disqualified.[2] Rule 3 D suggests two options when faced with disqualification: withdraw or disclose. But disclosure is only an option when there is a financial or family connection. Rule 3 C(1),

---

**2.** In *Judicial Qualifications Com'n v. Schirado,* 364 N.W.2d 50 (N.D.1985), disciplinary action was taken against a county judge who presided over two trials, in each of which he had previously represented a litigant in the same matter. In one instance we found that he "did not immediately disqualify himself when he was presented with facts of his prior representa-

tion." *Judicial Qualifications Com'n v. Schirado, supra,* at 54. In the second instance, we found that the judge did not inform the parties of his prior representation, nor did he disqualify himself. We did not rule on when he should have disqualified himself, if objection by a party was a prerequisite to disqualification, or if the disqualification could be waived.

subsections (c) and (d). Withdrawal is the only permissible action for personal prejudice or prior representation under subsections (a) and (b) of Rule 3(C)(1). Our construction of this Rule is that 3C(1)(a) and (b) cannot be remitted; a judge must immediately withdraw from a proceeding when he is so disqualified.[3]

▊ Other courts have held, under similar disqualification provisions of their judicial conduct rules, that disqualification is mandatory unless specifically stated to be waivable in the rules. For example, *Green v. State*, 21 Ark.App. 80, 729 S.W.2d 17, 20 (1987) said:

" 'We hold that Canon 3C is applicable in ... civil cases, ... that no request to disqualify and no objection for failure to disqualify is necessary to be made either by a trial attorney or by a party representing himself, that the trial judge must take the initiative to disqualify or, in the alternative, to comply with the procedure set out in Canon 3D, that this Court can, on its own initiative, examine the record to notice compliance or noncompliance, and that failure to comply is reversible error.' [citation omitted].

"Although we do not mean to impugn the integrity of the trial judge, we believe the law simply required a disqualification under the circumstances relating to the ... case." [citations omitted].

In *Grant v. State*, 700 S.W.2d 170, 171 (Mo.App.1985), the appeals court vacated judgment and "any and all orders or rul-

ings" made by the disqualified judge and remanded, saying:

"The duty of [the judge] to disqualify himself was absolute. It did not 'depend on the waiver of the issue by the parties.' [citations omitted]. Although ... Canon 3D permits 'remittal of disqualification' in certain situations, the instant situation is not within those exceptions."

*See Edmonson v. Farris*, 263 Ark. 505, 565 S.W.2d 617 (1978); *Haire v. Cook*, 237 Ga. 639, 229 S.E.2d 436, 438 (1976) ("Disqualification under Canon 3C is mandatory." However, where 3 D permits waiver, it need not be in writing and may be implied.); *Citizens First Nat. Bank v. Hoyt*, 297 N.W.2d 329 (Iowa 1980) (disqualification is ordinarily automatic and should be on judge's own initiative; however, where waiver is permitted it may be implied as well as express). *See also United States v. Nobel*, 696 F.2d 231 (3rd Cir.1982) (interpretation of comparable federal statute).

We see no obvious unethical behavior in Judge Foughty's participation, and we do not want to imply any because we can conceive several explanations, all wholly innocent, for his actions. However, because the appearance of propriety is so important to our judicial system, we hold the Orders signed by Judge Foughty are void. *See State ex rel. Johnson v. Thomson*, 76 N.D. 125, 34 N.W.2d 80, 89 (1948).

If the Orders had been ministerial or had contained no discretionary element, Judge Foughty might have properly signed them.[4]

---

3. When the Judiciary Standards Committee systematically revised the Code of Judicial Conduct in 1981, one of the major changes was to make the language of the Code mandatory. The Committee adopted a resolution that its future proposals to the Supreme Court would concern "rules of conduct for judges rather than guidelines for judicial conduct." Minutes, Judiciary Standards Committee, March 13, 1981 at p. 7. The mandatory nature of the Canons was emphasized at the next meeting by the committee's decision to use the term "Rules" rather than "Code" or "Canons," and to substitute the word "shall" for "should." Minutes, Judiciary Standards Committee, April 10, 1981 at p. 1–2. The *Rules* of Judicial Conduct were approved by the North Dakota Supreme Court, effective July 1, 1981.

4. 46 Am.Jur.2d *Judges* § 230 says:

"Disqualification of a judge to hear and decide a case suspends his powers only so far as discretionary action in the case is concerned. Thus, the disqualification of a judge to hear and determine a cause does not prevent him from making orders that are purely formal in character, or from performing merely ministerial duties in no way connected with the trial, such as arranging the calendar or regulating the order of business. Under this view, he is not disqualified from certifying to a transcript of a judgment rendered by his predecessor, or administering an oath. He may make such formal orders as are necessary to the maturing or the progress of the cause, or to bring the suit to a hearing and determination before a qualified judge, or another court having the jurisdiction, and may carry out the provisions of an order of re-

However, we do not understand them to be so. There was no clear order by the then county judge at the November 7, 1986 hearing. Although it might be possible to infer that an order approving settlement of the estate would follow if no evidence were submitted, it is not spelled out in the judge's remarks. Nor is it clear that the deposition of Kurtz was not to be considered. Therefore, we cannot say that Judge Foughty's signing the Orders was ministerial.

Because the Orders of Judge Foughty were void, they could not be ratified by Judge McClintock. "[A] void judgment is regarded as a nullity, ... It accordingly leaves the parties litigant in the same position they were in before the trial.... The general rule is that a judgment which is void cannot be cured by subsequent proceedings." 46 Am.Jur.2d *Judgments* §§ 49, 50.

A party seeking to set aside a judgment as void need not show a meritorious claim or defense.[5] *City of Grand Forks v. Mik-Lan Recreation Ass'n, Inc.*, 421 N.W.2d 806 (N.D.1988). Because we hold that the orders of Judge Foughty were void, Putnam's showing at the hearing on the motion to vacate before Judge McClintock did not necessitate a showing of the merits of his claim.

The personal representative of the estate argued, however, that the hearing before the assigned county judge was de novo, went beyond ratification, and obviated the need for reversal. However, the order for that hearing merely granted Putnam three weeks "to file a memorandum of law with the Court." If the hearing was intended to cover the substance of his claim as well as the procedural matter of vacating the prior orders, the hearing notice should have said so. But, no clear notice was given that the hearing was also to be a trial on the merits

of Putnam's constructive trust claim. And, no testimony was taken at the hearing.

Therefore, we reverse the assigned judge's order, vacate Judge Foughty's orders, and remand for consideration of Putnam's constructive trust claim.[6] Since the evidence on that claim has not been evaluated, we express no opinion on its merits.

LEVINE, Acting C.J., VANDE WALLE and GIERKE JJ., and VERNON R. PEDERSON, Surrogate Justice.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of ERICKSTAD, C.J., disqualified.

---

mand from a higher tribunal." [footnotes omitted].

5. NDRCivP 60(b) reads, in part:
"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order

in any action or proceeding for the following reasons:

\*     \*     \*     \*     \*     \*

"(iv) the judgment is void; ..."

6. *See Estate of Zins by Kelsch v. Zins*, 420 N.W. 2d 729 (N.D.1988).