607 A.2d 545

**Robert V.L. SHARP et al.**

v.

**HOWARD COUNTY, Maryland et al.**

No. 96, Sept. Term, 1991.

Court of Appeals of Maryland.

June 10, 1992.

Roger W. Titus (Paula T. Laboy, Venable, Baetjer & Howard, all on brief), Rockville, for petitioners.

Mark D. McCurdy, Sr. Asst. County Sol. (Barbara M. Cook, County Sol., both on brief), Ellicott City, Thomas E. Lloyd (Lloyd, Kane & Wieder, P.A., both on brief), Ellicott City, for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

RODOWSKY, Judge.

Nestled among the farms and residences of the Glenelg area of Howard County is a private airstrip with a turf runway where two or three light aircraft are stored out of doors. Litigation of various sorts involving this airstrip, between its owners and its protesting neighbors, has continued for nearly twenty years. The case now before us is the latest zoning appeal. Our concern here, however, is not with the merits. The issue on certiorari is whether the circuit court judge who heard this zoning appeal was required to recuse himself because, in 1973, he prepared restrictive covenants creating the airstrip. We conclude, as explained below, that the circuit judge should not have heard the appeal.

The tale begins in 1971 or 1972 when C. Raymond Somerlock (Somerlock), an electrical engineer who holds a commercial pilot's license, started actively to pursue his idea of acquiring a piece of property on which to build a residence and private airstrip. He located in Glenelg forty-five available acres that he considered suitable for his goal.

Sometime in 1972 Judge James Macgill had held in *Masek v. Board of Appeals,* Law No. A–5923 in the Circuit Court for Howard County, "that private aircraft landing fields

were permitted as a matter of right under the Howard County zoning regulations." *Schaefer v. Levy*, Law No. A–12605, slip op. at 1 (Cir.Ct. Howard County Oct. 14, 1985) (Memorandum opinion of Judge Morris Turk).[1] Within thirty days after the entry of judgment in the *Masek* case, a motion for reconsideration was filed under former Maryland Rule 625a, 9B Md.Code (1957, 1971 Repl.Vol.) 349. In early 1973 Somerlock and others jointly entered into a contract for the purchase of the forty-five acres.

On September 13, 1973, Judge Macgill granted the motion for reconsideration and revised his earlier opinion, "holding instead that private airstrips were not permitted by the Howard County zoning regulations." Turk at 2. "Presumably unaware of this decision, the group which had contracted to purchase the land ... executed a Declaration of Covenants on September 21, 1973." *Id.* Those covenants were prepared by Raymond J. Kane, Jr., a member of the Maryland Bar practicing in Howard County.

The covenants contemplate that the forty-five acres would be laid out in a row of eight lots, of approximately equal size, stretching east to west as depicted on an accompanying plat. The covenantors were the original grantees of the eight lots. The covenants contemplate that the grantees' deeds will create an easement along the southernmost 150 feet of the eight parcels, and, in the covenants, the grantees declare that that easement "shall be used for the purposes of an airstrip and related uses and appurtenances." The covenantors also agreed to share equally the cost of development and maintenance of the airstrip. The covenants run with the land.

Settlement of the acquisition of the forty-five acre subdivision was held on September 25, 1973. Subsequently, the

---

1. In the supplement to their petition for a special exception filed with the Board of Appeals in Howard County in this case, the airstrip owners included a copy of Judge Turk's opinion as an exhibit. They directed the attention of the Board of Appeals to the statement of facts in that opinion for the history of the airstrip. We shall hereinafter refer to that opinion as "Turk."

deeds and declaration of covenants were recorded in the Land Records of Howard County.

Use of the airstrip commenced in early 1974. Zoning enforcement officials of Howard County, relying on the ultimate holding in the *Masek* case, issued a cease and desist order in April 1974. In September of that year a new section was added to the Howard County zoning regulations permitting private airstrips if authorized by a special exception. "However, having not obtained such a permit, and in violation of the cease and desist order, the Covenantors continued using the airstrip from 1974 through 1976." Turk at 4. The Circuit Court for Howard County (Macgill, J.) in December 1976 enjoined the owners of the eight lots from using their land for a private airstrip. "Between 1975 and 1977, the owners of all of the lots on several occasions applied for a special exception use permit. In each instance, their application was denied." Turk at 4.

In September 1978 the airstrip owners applied to the Board of Appeals in Case No. 973–C for a special exception for a private airstrip, invoking a new zoning regulation that had been adopted in October of 1977. That application was denied. The owners appealed to the circuit court which ultimately remanded for reconsideration. That judgment was appealed to the Court of Special Appeals which affirmed in July 1982. *Lawton T. Sharp Farm, Inc. v. Somerlock,* 52 Md.App. 207, 447 A.2d 500, *cert. denied,* 294 Md. 622 (1982).

Hearings resumed before the Board of Appeals in June 1983 pursuant to the remand. Meanwhile, Marvin and Mary Alice Schaefer, husband and wife (the Schaefers), had purchased one of the eight lots. They sought a judgment declaring the restrictive covenants to be invalid. The opinion by Judge Turk of October 1985 sustained the validity of the covenants. That judgment appears not to have been appealed.

The resumed hearings in BA 973–C resulted in the grant of a special exception for the private airstrip by the Board

of Appeals in the fall of 1983. That grant was appealed by protestants to the Circuit Court for Howard County where the special exception was affirmed. That judgment was in turn appealed to the Court of Special Appeals which reversed and remanded with instructions to reverse the order of the Board of Appeals granting the special exception. *Fiol v. Howard County Bd. of Appeals*, 67 Md.App. 595, 508 A.2d 1005, *cert. denied*, 307 Md. 406, 514 A.2d 24 (1986). The Court of Special Appeals based its reversal on the fact that the Schaefers had requested to withdraw their lot from the petition pending before the Board of Appeals. As a result, the Board could not grant the special use permit. *Fiol* expressly disclaimed deciding whether the Schaefers' withdrawal from the special exception petition breached the declaration of covenants and, if so, what remedies might be available.

The remaining airstrip owners then sued the Schaefers for an injunction to compel them to comply with the covenants by signing a petition for a special exception. *Levy v. Schaeffer* [sic], No. 86–CA–3694 (Cir.Ct. Howard County May 11, 1987). Judge Raymond G. Thieme issued the injunction in May 1987, and the Schaefers appealed the judgment.

In July 1987 a petition for special exception, signed by all of the owners, including the Schaefers, was filed with the Board as BA 87–42E. While that petition was pending, the Schaefers' appeal was heard and decided by the Court of Special Appeals which, in an unreported opinion, affirmed Judge Thieme's injunction. Case No. BA 87–42E resulted in the grant of the special exception by the Board of Appeals in March 1989. Protesting property owners, Robert V.L. Sharp et al., the petitioners in this Court, appealed to the Circuit Court for Howard County.

The zoning appeal was assigned for hearing to Judge Raymond J. Kane, Jr. who, as a practicing attorney, had drafted the restrictive covenants in 1973. Judge Kane had been appointed a judge of the District Court of Maryland in

1977 and a judge of the Circuit Court for Howard County in 1982.

Counsel for the protestants [2] respectfully requested that Judge Kane recuse himself. Counsel referred to Judge Kane's prior representation of Somerlock "in the creation of covenants that bound several separately owned lots [and] actually created the easement of the airstrip right of way." Counsel invoked and read from Maryland Rule 1231, the Maryland Code of Judicial Conduct, Canon 3C(1)(b). It reads:

"C. RECUSAL.

(1) A judge should not participate in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

. . .

(b) the judge served as lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or lawyer has been a material witness concerning it."

The protestants' counsel disclaimed "implying that [Judge Kane] would be biased in any way."

Counsel for the airstrip owners took no position on the motion, opining that it was something which the court would have to decide for itself. The owners' attorney pointed out that his clients would not suffer any prejudice from a decision on the motion one way or the other.

Judge Kane assured counsel and the parties that he was not predisposed to rule for or against anyone. He said that he did not recall the content of the covenants. He agreed that he had performed the professional service when reminded of it in a conversation with counsel for the parties in chambers, alerting him to the motion which would be made on the record. Judge Kane concluded that his "limited

---

**2.** Counsel for the petitioners in this Court did not represent the petitioners, as appellants, in the Circuit Court for Howard County.

association with this property ... would [not] affect one iota [his] ability to preside in the case." He did not believe that his having drawn up some covenants years ago "would even create [an] appearance of impropriety." The recusal motion was denied.

Judge Kane sustained the Board of Appeals in granting the special exception and the protestants appealed. The Court of Special Appeals affirmed in an unreported opinion. One issue raised on appeal was the denial of the recusal motion. The Court of Special Appeals, focusing on the words "matter in controversy" in Canon 3C(1)(b), reminded the protestants "that it is the grant of the special exception by the Board, not the underlying covenants, which was the matter in controversy. As an attorney, Judge Kane had not sought the special exception from the Board."

The protestants petitioned this Court for the writ of certiorari which we granted, limiting the writ to the following question:

> "Where an attorney authors a legal document that binds a group of persons together in a common enterprise, may that attorney, after becoming a judge, preside over a case involving an appeal from an essential administrative approval given for the conduct of that enterprise?"

Briefing and arguing as respondents in this Court are Howard County, Maryland and the owners of the airstrip, Enos C. Levy et al.

The problem before us is the construction and application to the facts here of Canon 3C(1)(b). The Canon's general rule is stated in paragraph (1), namely that "[a] judge should not participate in a proceeding in which the judge's impartiality might reasonably be questioned." The remaining subparagraphs simply present specific illustrations of the general rule, without limiting the generality of its application. Thus, subparagraph (a) advises that the general rule applies where "the judge has a personal bias or prejudice concerning a party, or personal knowledge of

disputed evidentiary facts concerning the proceeding." Subparagraphs (c) and (d) deal with significant financial interest "in the subject matter in controversy" and with a judge's relationship by marriage or blood to a party, counsel, or material witness. In the language of Canon 3, the issue here is whether Judge Kane "served as lawyer in the matter in controversy." If so, the parties agree that recusal would be mandatory.

## I

In accord with the consensus of the parties here, an apparent majority of courts interpret Canon 3C to require mandatory recusal in certain situations. Leslie W. Abramson, *Judicial Disqualification Under Canon 3C of the Code of Judicial Conduct* 10 (1986); *see Los v. Los,* 595 A.2d 381, 384 (Del.1991); *In re Estate of Risovi,* 429 N.W.2d 404, 406–07 & n. 3 (N.D.1988) (applying a slightly different version of Canon 3C). These decisions may well be influenced by federal cases applying a statute which is derived from Canon 3C but which is drafted in clearly mandatory language. 28 U.S.C. § 455 (1988); *see Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988).

Canon 3C is also influenced by Canon 3D which reads:

"Where recusal would be required by Canon 3C(1)(c) or Canon 3C(1)(d), the judge may disclose on the record the basis of the recusal. If the lawyers, after consultation with their clients and independently of the judge's participation, all agree on the record that the judge ought to participate notwithstanding the basis for recusal, the judge may participate in the proceeding."

By permitting the parties to waive disqualification under subsections (c) and (d), Canon 3D implies that waiver is not permitted under subsections (a) and (b). We agree that, if Judge Kane "served as [a] lawyer in the matter in controversy," recusal would be mandatory.

## II

Petitioners submit that the Court of Special Appeals' application of Canon 3C(1)(b) was too narrow. They argue that the matter in controversy here is not the application for a special exception, but it is the airstrip itself. They argue that the covenants "served as the legal glue" which kept together the airstrip enterprise of eight contiguous land-owners and that the covenants furnished the minimum acreage required for the special exception use. Indeed, petitioners point out that Judge Thieme's injunction issued to the Schaefers was supported by an interpretation of the covenants. Petitioners also put a hypothetical in which an attorney incorporates a group of investors for the purpose of establishing a radio station. The submission is that the hypothetical attorney could not sit as a judge in an adminis-trative appeal from the grant or denial of a broadcasting license for that station.

The respondents submit that the restrictive covenants and the zoning laws are legally distinct and operate indepen-dently of each other. The existence, validity, or interpreta-tion of the covenants are not involved as an issue in the special exception case. Respondents say that "[t]he only element in common to the zoning and the covenants was that the 45 acre tract was the subject of both the covenants and of the zoning case." Brief of Respondents, Enos C. Levy et al., at 18.

What constitutes the "matter in controversy" within the meaning of Canon 3C(1)(b) necessarily depends on the facts. The facts presented here lie between two competing propo-sitions. On the one hand is the rule that judges are not disqualified from an action simply because it involves a former client as a party. *Chitimacha Tribe v. Harry L. Laws Co.*, 690 F.2d 1157, 1166 (5th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *National Auto Brokers Corp. v. General Motors Corp.*, 572 F.2d 953, 958 (2d Cir.1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979). On the other is the proposition that procedurally different actions or proceedings, involving

different substantive law applications, can involve the same matter in controversy if the factual occurrence is substantially the same. For example, where a judge during his term as prosecutor had pressed criminal charges against a police officer for the death of a person whom the officer was trying to arrest, the judge was required to recuse himself from a later civil proceeding in which the police officer sought compensation from his employer for injuries sustained while making the arrest. *Rushing v. City of Georgiana*, 361 So.2d 11 (Ala.1978). Similarly, where, as a lawyer, the judge had represented the operator of a motor vehicle on traffic charges, the judge under local versions of Canon 3C(1)(a) and (b) could not preside over a civil action for money damages arising out of the same accident and brought against the operator's father. *Judicial Qualifications Comm'n v. Schirado*, 364 N.W.2d 50, 54–56 (N.D. 1985).

In the matter before us Judge Kane's representation of the owners of the planned airstrip was transactional and was not adversarial *vis-a-vis* the owners of nearby residences, in the sense that the representation did not involve any then pending court or agency proceeding. Cases involving such nonadversarial, transactional representation by the judge, as an attorney, of a party then before the court, where the prior transaction is related to the present litigation, are very close to the line between required recusal and presiding. There are a relatively small number of cases decided under Canon 3C(1)(b), 28 U.S.C. § 455, or other, sometimes unspecified law, which cluster around that line. On which side of the line the decision falls is probably only explainable by reference to the specific facts.

*In re Disqualification of Martin (Weber v. Weber)*, 43 Ohio St.3d 602, 538 N.E.2d 1024 (1989), involved litigation between a decedent's estate and third parties arising out of transactions between the decedent or the estate and the third parties. The presiding judge was not disqualified by virtue of having prepared the decedent's last will. Preparation of the will in the Ohio case is more remote to the

subsequent litigation than is the preparation of the restrictive covenants in the case before us, because use of the airstrip created by the covenants is the subject of the controversy.

*Ratliff v. Oney*, 735 S.W.2d 338 (Ky.App.1987), also affirmed a denial of recusal in litigation over the ownership of land. In 1973 the judge, while an attorney, prepared and notarized an affidavit signed by a person who claimed title to the property by adverse possession. Ten years later a successor of the affiant filed suit against the successors of the record owner and obtained judgment by default. Motions to vacate that judgment were denied, and the intermediate appellate court affirmed. In the reported action, successors of the record owner sued, contending a lack of personal jurisdiction for the earlier judgment. Recusal predicated on the affidavit's preparation was refused, and the judge granted the defendant's motion to dismiss on res judicata grounds. The reported decision reverses that dismissal, holding that the prior judgment lacked personal jurisdiction. On the recusal issue the court simply commented that the affidavit antedated the original action by ten years. It does not appear from the face of the opinion that the affidavit played any role in the earlier litigation, or with respect to the merits in the action before the court.

The remaining cases in the cluster hold that recusal was required. The judge in *In re Estate of Risovi*, 429 N.W.2d 404 (N.D.1988), entered an order approving the distribution of a decedent's estate over the objection of claimants who contended that a constructive trust should be imposed on the amount in joint accounts. Within the preceding year the claimants had consulted with the judge, as an attorney, to determine why distribution was not contemplated in accordance with express trusts created by the will. The clients were advised that the trusts had never been funded.

The judge in *Swift v. Kniffen*, 706 P.2d 296 (Alaska 1985), was disqualified from hearing a case against a developer brought by persons seeking use of a roadway in a subdivision by common law dedication because the judge, as attor-

ney, had represented the same developer in defense of a common law dedication case by other plaintiffs seeking a roadway in the same subdivision.

A wife, as defendant and counterclaimant in a divorce case, sought to disqualify the judge in *Murray v. Murray*, 73 A.D.2d 1015, 424 N.Y.S.2d 50 (1980). Ten years previously the wife had consulted with the judge, when she was a legal aid attorney, concerning domestic difficulties with the same husband. The wife did not qualify for legal aid representation and the then attorney refused to represent the wife as a private lawyer. In a three-two decision the appellate court held that the judge should have disqualified herself. Dissenting judges emphasized that "[n]one of these designated causes was pending at the time of the alleged contacts, nor was any legal action taken on behalf of defendant, no legal advice was given, and no representation was undertaken and no fee was paid." 424 N.Y.S.2d at 52.

Where an action to determine the title to land and then to partition it was pending before a judge who, as an attorney, had given an opinion on the title, the judge was required to recuse himself under a provision of the Texas Constitution. *Williams v. Kirven*, 532 S.W.2d 159 (Tex.Civ.App.1976). This result was required despite the fact that the opinion rendered was that the title was in hopeless confusion and that an action should be brought to settle it.

The theme running through the foregoing decisions requiring recusal is the appearance of partiality. That policy of Canon 3C(1)(b) is made plain by the requirement of recusal where "a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter." This aspect of the Canon has been applied to require recusal where the judge had no personal knowledge of the client or of the matter. *See In re Letters Rogatory*, 661 F.Supp. 1168 (E.D.Mich.1987) (motion to enforce subpoena against attorney in judge's former firm for records of former client serviced only by former partner); *In re Norton*, 119 B.R. 332 (Bkrtcy.N.D.Ga.1990) (bankrupt-

cy judge could not preside over any disputes between debtor and a certain creditor, represented briefly by judge's former partner before taken as "portable" by former partner to another law firm, without the judge sharing in any fees earned). The Canon's concern with appearances, however, is not measured by the subjective beliefs or fancies of the litigants. Rather, the standard is an objective one, which looks to whether "the judge's impartiality might reasonably be questioned." Canon 3C(1).

Applying this policy in light of the foregoing cases we conclude that recusal is required where the ultimate goal of an attorney's nonadversarial representation is at issue before the same attorney, as judge. Such cases create a reasonable appearance of partiality because the judge may be associated with the former client's cause as an advocate. When a judge has appeared as counsel in an earlier stage of the same adversarial proceeding, there is no question that the judge has advocated the client's cause, and recusal is automatic because of the danger of an appearance of partiality. *See Schirado*, 364 N.W.2d at 52–54. When a judge has given legal advice, or performed legal work in a nonadversarial setting, recusal is required only if the underlying purpose of the advice or work was to achieve the goal that is at issue in the later proceeding before the judge.

The instant case is a close one even under the rule we have formulated. Interpretation of the declaration of covenants was not at issue before Judge Kane. As counsel, Judge Kane had not expressed, insofar as this record shows, any opinion on the airstrip's compliance with zoning regulations. That was the issue before the Board under regulations more specific than those existing when the covenants were drafted.

Nevertheless, the airstrip owners' purpose in having lawyer Kane draft the declaration was the same as the owners' purpose in petitioning the Board for a special exception. Respondents would have us hold that the purpose of the declaration was merely to govern the owners' internal rela-

tionships. More realistically the declaration's purpose was to create the legal framework for an operable airstrip from the standpoint of real property and contract law. The issue before the Board on the 1987 application was whether the airstrip legally should be allowed to operate, from the standpoint of zoning law. Although to those trained in the law the distinction is meaningful, it is too subtle to apply here where the policy underlying the Canon is to avoid any reasonable question concerning impartiality in the minds of the litigants and of the public in all cases.

Nor does the passage of some seventeen years between lawyer Kane's representation and Judge Kane's ruling on the recusal request attenuate the effect of the earlier legal representation of the airstrip owners. The answer is well expressed by counsel for the airstrip owners in their supplement to their petition for the special exception which initiated the latest round in this ongoing controversy. The owners told the Board the following:

"This Supplement is bigger than any other because this case is unique. It is older than any other case, having its genesis in a Declaration of Covenants dated September 21, 1973 ... in which the then owners of the subject property imposed a common design of development and occupation for their land as a residential airport community named 'Glenair.' Zoning problems arose early, and Glenair has been before the Board of Appeals at least six times and full hearings have twice been held in BA Case No. 973C, once in 1978 and once in 1983 after which a special permit was granted. It has received more judicial attention than any other zoning case, being the subject of at least six Circuit Court cases and two appellate decisions. ... The record is, to say the least, extensive."

For all the foregoing reasons, Judge Kane should have recused himself in this "unique" case.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF A MANDATE VACATING THE JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUN-

TY AND REMANDING THIS CASE TO THE CIRCUIT COURT FOR HOWARD COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID ONE-HALF BY THE RESPONDENT, HOWARD COUNTY, MARYLAND, AND ONE-HALF BY THE RESPONDENTS, ENOS C. LEVY ET AL.