788 A.2d 320 (2002)
Maxie Lee RIVERS, Plaintiff-Respondent,
v.
Letitia COX-RIVERS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 10, 2001.
Decided January 14, 2002.
*321 Letitia Cox-Rivers, appellant pro se.
Maxie Lee Rivers, respondent pro se.
Before Judges PETRELLA, KESTIN and ALLEY.
The opinion of the court was delivered by KESTIN, J.A.D.
In this post-divorce-judgment matter, defendant, Letitia Cox-Rivers, appeals from the trial court's order of February 23, 2001, after a plenary hearing, allocating the parties' custodial and financial responsibilities for their three college-age children, including arrearages and the maintenance of life insurance coverage. Without addressing the substance of the order, we vacate it and remand the matter for consideration anew by another judge.
After the entry of the February 23 order, defendant moved, returnable March 28, 2001, for a rehearing and recusal of the judge or, alternatively, for vacation or amendment of the order. Defendant filed a certification in support of the motion. Among the reasons advanced for the judge's recusal was the following:
In addition to what I feel was biased treatment during the past few months from [the judge], I recently retrieved an order filed December 3, 1987 in Somerset County during a legal separation between defendant and plaintiff prior to the divorce in this matter wherein [the judge as a practitioner with a law firm then representing the current plaintiff] appeared on November 13, 1987 as counsel for plaintiff (then defendant).
The December 3, 1987 order referred to was attached as an exhibit. It noted the described appearance.
The judge decided the motion on the papers, explaining his reasons in an oral opinion on April 6, 2001. In disposing of the foregoing contention, the judge said:
I certainly didn't recall that. Actually, that was between ... Edna L. Rivers and Maxie L. Rivers. I'm guessing that was his prior divorce action, unless Edna is also Letitia, which may be because she says it was between the two of them. [It is undisputed that Edna L. and Letitia are the same person.]
I certainly had no recollection at the time that I heard this matter that I had ever represented the plaintiff in this matter. I believe that if ... the defendant, Mrs. Rivers, knew that, that indeed, as suggested by Mrs. Rivers, that she knew it sometime ago and held that as a trump card to obtain aand to raise an issue on appeal if things didn't go her way.
I had no recollection of Mr. or Mrs. Rivers at the time that I heard this, all the way up until the time I rendered the last order in the case. I ... don't recall having any contact with Mr. Rivers after that proceeding back in 1987.
And actually, I think Mrs. Rivers was very happy with her treatment by the court up until the time that I indicated that I had neglected to divide ... the obligation in half and corrected that error in the last order.
... [T]he matter's already been resolved,... so I don't see any reason to und[o] what I did. This was a complete surprise to me that I ever had even met *322 the people before, and I was surprised that nobody said anything to me.
The motion was denied in all particulars. As to the recusal aspect, the judge went on to state:
I am denying her request to disqualify me. If I represented him 14 years ago, that was news to me. At the point that I heard hersaw her most recent papers, II don't believe that she just recently found that out.
I suspect that she did know that for quite some time and chose not to even say anything to me, and so ... at the very best I think she waived ... that right to ask for that.
But in any case, I didn't know that I represented him, and there certainly was no bias on my part to Mr. Rivers, and if she doesn't like ... the decision, she can certainly take an appeal.
We vacate the February 23, 2001 order because of the need to apply a bright-line rule: Except when required by the rule of necessity,[*] where a judge has previously represented one of the parties in a matter before him against the other, any judicial action taken is a nullity, whether the conflict comes to light during the proceedings before an order enters or reasonably soon following the conclusion of the matter after an order has been entered. See N.J.S.A. 2A:15-49b; R. 1:12-1(c), (f). That result is required by the need "to maintain public confidence in the integrity of the judicial process, which in turn depends on a belief [by litigants and the general public alike] in the impartiality of judicial decisionmaking." State v. Kettles, 345 N.J.Super. 466, 469-70, 785 A.2d 925, 928 (App.Div.2001) (quoting United States v. Nobel, 696 F.2d 231, 235 (3d Cir.1982), cert. denied, 462 U.S. 1118, 103 S.Ct. 3086, 77 L.Ed.2d 1348 (1983) (alteration in original)). We hold further, as we did in Kettles, that the conflict is non-waivable by the parties, either expressly or implicitly. If a judge is precluded from presiding over a matter in which a former client is involved, especially where the current adversary is the party against whom the prior representation occurred, any action taken by the judge as a result of the proceeding cannot be recognized as valid.
Although the principle on which we rely was applied in Kettles and Nobel in criminal prosecutions, see also State v. Tucker, 264 N.J.Super. 549, 554-55, 625 A.2d 34 (App.Div.1993), certif. denied, 135 N.J. 468, 640 A.2d 850 (1994); State v. Horton, 199 N.J.Super. 368, 374-77, 489 A.2d 1164 (App.Div.1985); Mustafoski v. State, 867 P.2d 824, 835-36 (Alaska Ct.App.1994), the public policy imperatives are the same in civil cases. See, e.g., Sharp v. Howard County, 327 Md. 17, 607 A.2d 545, 551 (1992) ("When a judge has appeared as counsel in an earlier stage of the same adversarial proceeding, there is no question that the judge has advocated the client's cause, and recusal is automatic because of the danger of an appearance of partiality."); Murray v. Murray, 73 A.D.2d 1015, 424 N.Y.S.2d 50, 51 (1980) (Where a party had previously consulted the judge as a practitioner about "marital difficulties and child support," but had not retained her, the judge was nevertheless required to disqualify herself from presiding over a divorce case involving the same parties.); Cummings v. Christensen, 109 Misc.2d 255, 439 N.Y.S.2d 825 (Fam.Ct. 1981) (Where the judge had previously *323 been involved as law guardian for the children in a marital custody proceeding, disqualification was required in a subsequent suit involving the same parties. Neither disclosure nor consent could cure the conflict and the required recusal). To the extent Bonnet v. Stewart, 155 N.J.Super. 326, 382 A.2d 930 (App.Div.), certif. denied, 77 N.J. 468, 391 A.2d 483 (1978), can be read to stand for a different result, we regard it as distinguishable on its facts. In Bonnet, there was no identity of both parties in the litigation at hand with both parties in the prior proceeding. Here, not only are the parties identical but the underlying subject matter is the same, i.e., the marriage and the parties' rights stemming therefrom. Even if waiver of the conflict had been possible in the instant matter, there was no at-length discussion of the problem in the trial court proceeding before us, as there had been in Bonnet with a resolution on different factual dynamics that could be taken as a waiver by both parties of their rights to invoke the disqualification imposed by N.J.S.A. 2A:15-49b and R. 1:12-1(c), (f).
If there is validity to the sense of the trial court judge in this matter that defendant knew of the disqualifying involvement early on, and was withholding the information as a "trump card", that alone is no ground for recognizing the inherently invalid order. Rather, in a future proceeding, it may be fitting to impose appropriate sanctions on defendant as well as to compensate her adversary for the wasted effort. We note, however, especially in the latter regard, that the obligation to disclose the disqualifying involvement rested equally upon each party who had knowledge of the involvement.
We stress that we find no fault with the judge's inability to recall the involvement that produced the conflict. It appears that he had been called upon, on a single occasion more than thirteen years before the proceeding at hand, to help discharge his law firm's obligation to represent a client on a motion. He can hardly be charged with any impropriety or dereliction for failing to recall the occasion. And we find nothing in the record before us that even suggests this judge did not deal with both of the parties fairly and impartially. In the absence of the failure of either or both of the parties to call the conflict-producing involvement to his attention, there is nothing in the matter warranting criticism of the judge on this account for his omission to recognize the bright-line rule we apply today.
In the light of our disposition and the reasons underlying it, we express no view on the substantive issues raised before the trial court or on appeal. Moreover, it is of no consequence that defendant's notice of appeal did not include a reference to the trial court's April 5, 2001 order disposing of the recusal motion, although the issue was specified by defendant in her case information statement as one she intended to raise on appeal. Nor is it significant that neither party has argued that issue on appeal. It has become a genuine question in the case, and systemic needs require that it be addressed by us sua sponte.
The order of February 23, 2001 is vacated and the matter is remanded for consideration anew of all issues by another judge.
NOTES
[*] "[I]f by the disqualification of a judge there would be no means of proceeding, he may take such cognizance of the case as is absolutely necessary." Pyatt v. Mayor & Council of Dunellen, 9 N.J. 548, 557, 89 A.2d 1 (1952) (quoting Downs v. Mayor & Common Council of South Amboy, 116 N.J.L. 511, 515, 185 A. 15 (E. & A.1936)); see also 48A C.J.S. Judges § 100 (1981); cf. 32 Am.Jur.2d Federal Courts § 53 (1995).