526 A.2d 102

WINDSOR RESORT INCORPORATED t/a Trimper's Rides

v.

MAYOR AND CITY COUNCIL OF OCEAN CITY.

No. 1246, Sept. Term, 1986.

Court of Special Appeals of Maryland.

June 5, 1987.

Lee H. Ogburn (Kathleen A. Birrane and Kramon & Graham, P.A., on brief), Baltimore, for appellant.

Guy R. Ayres, III (Nicholas T. Exarhakis and Ayres, Jenkins, Gordy & Almand, P.A., on brief), Ocean City, for appellee.

Argued before GILBERT, C.J., and WEANT and BLOOM, JJ.

BLOOM, Judge.

The Mayor and City Council of Ocean City, Maryland, appellee, brought an action, sounding in trespass, ejectment and nuisance, against appellant, Windsor Resort, Inc. The City sought to require the removal of two buildings owned by Windsor from their location just east of the boardwalk, between South Division Street and South First Street in Ocean City. The City contends that the buildings constitute encroachments on and partial obstructions of public property, that is, a strip of land lying between the easternmost (beachfront) lots in Ocean City and the low water mark of the Atlantic Ocean, which is shown and delineated as "Atlantic Avenue" on plats recorded among the land records of Worcester County. The Circuit Court for Worcester County agreed with the City and ordered Windsor to remove the buildings, and Windsor appealed.

The critical issue is whether the City has any interest, superior to that of appellant, in the land upon which the Windsor buildings are erected.

In its amended complaint, as well as in its presentation to the circuit court and its brief and argument before this Court, the City asserted that it is the "owner" of the land in question by virtue of "dedications" contained in (1) a deed and plat, dated July 28, 1876, from Stephen Tabor to Hillary R. Pitts, et al., Trustees, and (2) a plat created by the Sinepuxent Beach Company, dated 1890,[1] and Chapter 209 of the Laws of Maryland, 1880, the Act incorporating the "Town of Ocean City."

The evidence in this case consisted of various documents, including those referred to above, testimony as to the

---

1. These documents are almost completely illegible. The copy of the 1876 deed and plat that were filed as an exhibit is a photocopy of a handwritten deed and hand drawn plat so reduced in size as to be virtually unintelligible. The copy of the 1890 plat that was filed as an exhibit consists of a series of reduced size photocopies upon which lot lines and streets are discernible but letters and numbers are indecipherable. Needless to say, the reproductions of these documents in the printed record extract are no better than the exhibits themselves.

history of the buildings in question and actions of the City relating to them, and stipulations in the form of statements of historical facts by counsel for appellee and acceptance of those statements by counsel for appellant. From these documents and stipulated or otherwise undisputed facts in the record, we are able to construct the following history.

The Windsor buildings are located on a small portion of a 280–acre tract conveyed by the State of Maryland to Stephen Tabor and Hepburn Benson in 1869. Tabor later acquired Benson's interest and then conveyed 50 acres to three individuals as trustees for the purpose of creating a summer resort town. Attached to that deed was a plat (hereinafter referred to as the "Tabor Plat"), which divided the 50–acre tract into lots and streets. All of the land—fast land, sand, beach, and shore—lying between the easternmost lots and the waters of the Atlantic Ocean was identified on that plat as "Atlantic Avenue." The Tabor Plat shows Atlantic Avenue ending at the north and south boundaries of the tract conveyed to the trustees.

By Chapter 209 of the Laws of 1880, the General Assembly incorporated the Town of Ocean City. The Act described the boundaries of the town as encompassing the land lying between Sinepuxent Bay on the west and the Atlantic Ocean on the east, as far north as the northern border of the land conveyed by Tabor to the three trustees, and as far south as the southern border of a tract conveyed by Tabor to Granville Stokes in 1879. Although the parties did not introduce evidence that would place the location of the Stokes property, they agree that South Division Street, which is the southernmost line on the Tabor Plat, was the southern boundary of the original Town of Ocean City. The Act of 1880 did not refer directly to the Tabor Plat, but it did mention Atlantic Avenue, which at that time existed only on that plat.

Subsequent to the incorporation of Ocean City, Tabor (and later his executors) disposed of the remaining portions of the original 280–acre tract. Land south of the city limits and immediately west of the southerly extension of Atlantic

Avenue, between South Division Street and what is now South First Street, was conveyed in seven 50–foot lots to six individuals and the Sinepuxent Beach Company. The parties stipulated that the deeds conveying those seven parcels identify the western edge of Atlantic Avenue as being the eastern boundary of the lots.[2] Sinepuxent Beach Company thereafter acquired the balance of Tabor's remaining property holdings.

In 1890, Sinepuxent Beach Company recorded a plat (hereinafter referred to as the "Sinepuxent Plat") which covered not only its own property but also included all of the lots that Tabor had already conveyed away. It encompassed the entire area shown on the Tabor Plat and large areas of land between Sinepuxent Bay and Atlantic Ocean both north and south of the original boundaries of Ocean City. The Sinepuxent Plat subdivided the entire area, from what is now Assateague Island[3] north to what is now 33rd Street, into lots, streets and alleys. Atlantic Avenue is shown on the Sinepuxent Plat as extending the entire length of the platted territory.

During the period from 1891 to 1907, Margaret Trimper acquired the seven beachfront lots between South Division Street and South First Street. Sometime thereafter, but before 1916, Trimper and the other beachfront owners constructed a boardwalk—a pedestrian walkway—on the westernmost side of Atlantic Avenue, abutting their properties. Around 1916, Trimper built two structures on Atlantic Avenue east of the boardwalk and across from her beachfront lots. Those buildings were used as an adjunct to commercial enterprises located on her property to the west of the boardwalk. Although built on pilings, those struc-

---

2. At the time those parcels were conveyed Atlantic Avenue existed neither in fact nor on paper south of the limits of the incorporated town.

3. Prior to the hurricane of 1933 the land between Ocean City and Assateague was contiguous. In 1933, an inlet was formed which separated Ocean City from Assateague.

tures were periodically exposed to the surf[4] and had to undergo substantial reconstruction on a yearly basis. In 1934 the Army Corps of Engineers erected a jetty which eventually resulted in a gradual buildup of the beach around the Trimper buildings.

In 1936, Trimper's devisees conveyed the beachfront lots to a family business, appellant, Windsor Resorts, Inc. Windsor continues to maintain the structures on the east side of the boardwalk and collect rent for their use.

In 1965, Windsor's tenant sought and received a building permit from the City of Ocean City to renovate the northern building. The following year, the City granted a permit for Windsor to reconstruct its southern building. Prior to granting that permit, however, the City requested Windsor to relocate the building several feet north and east, in order to accommodate the planned construction of a station for the City's boardwalk train. Windsor complied. Approximately $100,000 was spent in renovating and rebuilding the two structures.

Beginning in 1966, Windsor began to pay property tax bills related to the two buildings at issue. Around that time, the City offered Windsor a license franchise to maintain its buildings in their present location within Atlantic Avenue. Windsor declined the offer and continued to utilize the buildings without hindrance or objection for the next 18 years until, in 1984, the City chose to exercise what it claims to be its right to the land upon which the Windsor buildings lie. Windsor refused the City's demand that it vacate the buildings and this action ensued.

Appellant raises several issues of which we need only address two:

I. Does the City possess fee title to Atlantic Avenue?

---

4. The 1933 hurricane eliminated all of the beach area, and for some time thereafter the tide regularly rose under and washed over the boardwalk in the area of those buildings.

II. Did the City produce sufficient evidence to support a finding that it effectively accepted the dedication of the land on which the Windsor buildings stand?

Our answer to both questions is in the negative, thus we shall reverse the judgment of the court below.

I

Ocean City maintained in its brief and at argument that it is the owner in fee of Atlantic Avenue as a result of the dedication to a public use of that land, the inundation of Atlantic Avenue by the ocean after the storm of 1933, and the reclamation of Atlantic Avenue which allegedly resulted from the erection of a jetty by the U.S. Army Corps of Engineers. The first contention, that the City is the owner of the land in question by virtue of dedication, is patently erroneous. The interest that the public—or a governmental entity on behalf of the public—can acquire through dedication of a street or way (or a park or any other facility for public use) is an easement or right of user, not a fee. The remaining bases for the City's claim to ownership of Atlantic Avenue are equally flawed.

The City seeks to invoke a modified version of the general principle that land inundated by mean high water reverts to state ownership. *See Department of Natural Resources v. Mayor of Ocean City,* 274 Md. 1, 14, 332 A.2d 630 (1975). The City maintains that because Tabor's original grant from the state extended to the low water mark, all land inundated by low water reverts to the state, thus the City. Consequently, it is argued that the land upon which the Windsor buildings stand became City property when the mean low water mark shifted west of the boardwalk as a result of the storm of 1933.

 We find it unnecessary to determine whether the rule of submergence should be altered to reflect the extent of Tabor's original grant. That general rule applies only to instances of gradual erosion of fast land. *Id.* at 15, 332 A.2d 630. That is not what occurred in this case. The undisputed testimony below was that the shoreline was

altered by storm. Such a sudden or violent change to the topography of the shoreline is an avulsion and has no effect on boundaries and ownership rights. 1 H. Farnham, *Law of Waters and Water Rights*, § 74 (1904); 78 Am.Jur.2d *Waters*, § 411 (1985). We reject for the same reason the contention by Windsor that it became the littoral owner in 1933, when the shoreline encroached upon its property located west of the boardwalk, and thus became entitled to the subsequent accretions. The rule of submergence is inapplicable to this appeal.

■ As another variation on the general law of water rights, the City asserts it acquired fee over Atlantic Avenue when the jetty erected by the U.S. Army Corps of Engineers caused Atlantic Avenue to be reclaimed from the ocean. In support of that contention, the City relies upon *Carolina Beach Fishing Pier, Inc. v. Town of Carolina Beach*, 277 N.C. 297, 177 S.E.2d 513 (1970), in which it was held that land formed as a result of the erection of a seawall by the Corps of Engineers in Carolina Beach belonged to the Town, not the adjacent landowners. That holding, however, was squarely based on a North Carolina statute which granted to the Town fee title in land created by the seawall. There is no comparable Maryland statute. The *Carolina Beach* case is inapposite.

■ Reasonbly inferred from the City's contention is the argument that the "government-made" land should be imbued with a public trust. The recognition of such a trust, however, might well depend upon the precise purpose behind the erection of the jetty, *cf. Department of Natural Resources, supra*, 274 Md. at 14, 332 A.2d 630, yet the City failed to introduce any evidence concerning the reason or purpose behind the governmental decision to construct the jetty. The mere fact that expenditure of public funds eventually led to Atlantic Avenue being reclaimed from the ocean is not sufficient in itself to warrant the imposition of a public trust. *Id.*

So far as the record in this case is concerned, the fee in Atlantic Avenue apparently remains vested in the Sinepuxent Beach Company and its successors, except to the extent that ownership may have been acquired by others through adverse possession. Consequently, since the maximum property right that the City can claim in Atlantic Avenue is an easement or right of use, we may summarily dispose of two-thirds of its complaint, *viz.*, ejectment and trespass. It has long been established by law in this state that an action in ejectment will not lie, at the suit of one having no title to the land, to recover a right of way or other easement or any incorporeal hereditaments. *Canton v. Mayor of Baltimore City,* 106 Md. 69, 66 A. 679 (1907); *Nicolai v. Mayor of Baltimore,* 100 Md. 579, 60 A. 627 (1905). By the same token, an action in trespass q.c.f. will not lie at the instance of one who is neither in actual possession nor entitled to immediate possession, *see McAuliffe v. Lerch,* 189 Md. 672, 675, 57 A.2d 329 (1948); *Ridgely v. Bond,* 17 Md. 14, 22 (1861), and a mere easement is not a possessory interest. "The law seems to be well settled in this state and elsewhere that, for interference with or disturbance of an easement case, and not trespass or ejection, is the proper remedy." *Metaxas v. Easton Publishing Co.,* 154 Md. 393, 399, 140 A. 603 (1928).

The third count in the City's complaint, sounding in nuisance and seeking injunctive relief to abate it, is, however, a proper action for obstruction of or encroachment on a public street or way. *See Adams v. Commissioners of Trappe,* 204 Md. 165, 169, 102 A.2d 830 (1954).

## II

The circuit court found that Atlantic Avenue, thus the land upon which Windsor's buildings stand, had been dedicated as public roadway sometime prior to the erection, by Windsor's predecessor in interest, of the two buildings east of the boardwalk between South Division Street and South First Street. In order to reach that conclusion, the court found that the owner of the fee in Atlantic Avenue had

offered to dedicate the land to a public use and that the offer was accepted. *Cf. Mullan v. Hochman*, 157 Md. 213, 220–21, 145 A. 554 (1929). The record before us contains evidence to support a finding of an offer to dedicate, but no evidence of acceptance with respect to the land at issue.

When the owner of land prepares a plat depicting streets and later sells lots purportedly abutting those streets, an offer to dedicate the roadbed to a public use is presumed, absent language demonstrating a contrary intent. *Mauck v. Bailey*, 247 Md. 434, 442–43, 231 A.2d 685 (1967). Accordingly, the 1876 Tabor Plat of the land lying between North Division Street and South Division Street and the concurrent conveyance of that property constituted an offer to dedicate as Atlantic Avenue the land so depicted on the Tabor Plat. The 1890 Sinepuxent Plat extended Atlantic Avenue both north and south of the original town limits; however, that plat encompassed all of the property between what is now North 33rd Street and Assateague, irrespective of ownership. The City placed in evidence a copy of a deed from Tabor's executors to Sinepuxent Beach Company, ostensibly to establish that Sinepuxent Beach Company had acquired Tabor's fee interest in the land described as Atlantic Avenue. That document is practically illegible; we cannot make out the boundaries of the land conveyed by the deed. But since appellant does not contend that the area which the grantee later designated as Atlantic Avenue was not part of this conveyance, we shall assume that Sinepuxent Beach Company did acquire that land from Tabor and thus did have the right to make an offer of dedication of it. The filing of the Sinepuxent Plat constituted such an offer, just as the earlier Tabor Plat constituted an offer of dedication with respect to the streets shown thereon.

The presence of an offer to dedicate is only half of the equation, however. There must also be acceptance. Acceptance of a dedication can be manifested in four ways: (1) by deed or other record; (2) by acts *in pais*, such as opening, grading, etc., at the public expense; (3) by long

public use; or (4) by express statutory or similar official action.[5] *Town of Glenarden v. Lewis,* 261 Md. 1, 4, 273 A.2d 140 (1971). The court below found that the dedication of Atlantic Avenue was accepted both by legislative act and by acts *in pais.* That finding is not wholly accurate.

■ There can be no serious dispute that that portion of Atlantic Avenue which lies within the original boundaries of the Town of Ocean City was accepted by the General Assembly on behalf of Ocean City as a public roadway. The act incorporating the town expressly refers to Atlantic Avenue as the easternmost street and directs that stones be placed at its northern and southern boundaries and its intersections. Laws of 1880, Ch. 209. Similar legislative action was held to constitute acceptance of an offer of dedication in *Mayor of Baltimore v. Chesapeake Marine Railway Co.,* 233 Md. 559, 197 A.2d 821 (1964). That Act, however, could not conceivably constitute an acceptance of a dedication of the land in question, which was outside the boundaries described in the statute.

The City presented no evidence below of any other statute referring to Atlantic Avenue as it lies between South Division Street and South First Street that could possibly constitute acceptance by statute or other legislative act. Indeed, the property in question did not come within the jurisdiction of Ocean City until the General Assembly enacted Chapter 474 of the Laws of 1886 to extend the boundaries of Ocean City one-half mile north and south of the original city limit. That Act, however, made no reference to any plat or to Atlantic Avenue. We are left, therefore, to determine whether the offer to dedicate the extended portion of Atlantic Avenue was accepted by acts *in pais.*

■ The record is totally devoid of any evidence that the City, prior to 1962, had ever expended public funds or undertook in any way to maintain any part of the beach

---

5. No evidence of acceptance by deed or by long public use was presented below, thus we shall ignore those possibilities.

area described on paper as Atlantic Avenue. It was the abutting landowners who maintained that land, constructing the boardwalk and placing pilings in Atlantic Avenue to protect the beach and their properties. So far as the record indicates, the town had been incorporated 82 years before it first demonstrated any municipal interest in Atlantic Avenue by accepting the responsibility for maintaining the boardwalk, which had been damaged by storm. By that time Windsor clearly had acquired by adverse possession (open, notorious, actual, exclusive, hostile, continuous, uninterrupted occupation) a fee interest in the land upon which its buildings stood. Although dedicated property cannot be acquired by adverse possession once dedication has been completed by public acceptance of the offer of dedication, adverse possession can run against the dedicator prior to public acceptance of the offer of dedication. *Mauck v. Bailey, supra,* 247 Md. at 443, 231 A.2d 685. Windsor's acquisition of the property operated as a revocation of the offer to dedicate the land occupied by the two buildings. *Id.* at 444, 231 A.2d 685. Accordingly, the City has never acquired any interest in the land upon which the Windsor buildings stood prior to 1962.

▰▰ The City maintains that adverse possession clearly does not apply to Windsor's southern building, because it was reconstructed in 1966, in part, on land theretofore not claimed by Windsor. That argument, however, ignores the fact that Windsor moved the building from its rightful location at the City's request so that the City could build a municipal boardwalk train station on Windsor's fee. Accordingly, we view the movement of Windsor's southernmost building as being simply an exchange of property for the City's convenience. Having induced Windsor to give up land it had earlier acquired and to expend money in constructing a building in reliance on that exchange, the City is now estopped from demanding removal of that building.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEE.