*Nathans Associates v. The Mayor and City Council of Ocean City,* No. 1240, Sept. Term 2017.  Opinion filed on December 21, 2018, by Berger, J.

ADVERSE POSSESSION - DEFENSE - PUBLIC EASEMENT - BURDEN

When a party seeking to quiet title via adverse possession has established actual, open, notorious, exclusive, and continuous possession for over twenty years, and a defendant raises a defense on the basis that the adversely possessed property is located within a dedicated and accepted public easement, the burden is upon the defendant to establish that the property is located within the public easement.

DEFENSE TO ADVERSE POSSESSION - LOCATION OF PLAT IN RELATION TO ON-THE-GROUND LOCATION - EVIDENTIARY SUFFICIENCY

There was insufficient evidence to support the conclusion that a property was located within a public easement when the only evidence presented in support was a 150-year-old handwritten deed and hand drawn plat and no additional evidence, such as testimony from a licensed surveyor or other expert, was presented to establish the on-ground-location of the property today in relation to the area described in the 1876 deed and accompanying plat.

RECUSAL

The trial court did not abuse its discretion by denying a motion for recusal when the motion for recusal was based upon the trial court judge's involvement in drafting an innocuous 1972 letter involving the property at issue in the case, but the letter did not in any way affect the issues involved in the case at bar.

Circuit Court for Worcester County
Case No. 23-C-16-000712

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1240

September Term, 2017
_____

NATHANS ASSOCIATES

v.

THE MAYOR AND CITY COUNCIL OF
OCEAN CITY
_____

>\*Woodward,
>Berger,
>Sharer, J. Frederick
>    (Senior Judge, Specially Assigned),
>
>JJ.
_____

Opinion by Berger, J.
_____

Filed:  December 21, 2018


\*Woodward, J., now retired, participated in the hearing and conference of this case while an active member of this Court and as its Chief Judge; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the preparation of this opinion.

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case involves the appellant's adverse possession claim of a parcel of property (the "Property") located at 601 S. Atlantic Avenue in Ocean City, Maryland. The Property has been continuously occupied and controlled by Nathan Rapoport and his family for the last one hundred six years. The Property is located on the east side of the Ocean City Boardwalk. The appellant is Nathans Associates ("Nathans"), a partnership comprised of Mr. Rapoport's granddaughter and great-grandchildren. The Mayor and City Council of Ocean City ("Ocean City"), appellee, conceded that Mr. Rapoport and his successors had been in actual, open, notorious, exclusive, and continuous possession and control of the Property since 1912. Ocean City contested the adverse possession claim on the basis that the Property was located within a dedicated and accepted public easement prior to Mr. Rapoport's acquisition of title to the Property by adverse possession.

The circuit court agreed with Ocean City and entered an opinion and order requiring Nathans to vacate the Property and to remove or demolish its building on the Property. Nathans appealed to this Court, presenting four issues for our consideration, which we have rephrased slightly and consolidated as follows:

1. Whether Ocean City presented sufficient evidence to support the circuit court's finding that the Property was physically located within the area of the dedication and public easement of the Town of Ocean City.

2. Whether Ocean City presented sufficient evidence to support the finding that the dedication of the Property was accepted and, therefore, that a public easement was created on the Property.

3. Whether the circuit court erred in concluding that Ocean City had not abandoned the Property and was not estopped from enforcing its easement as to the Property.

4. Whether the circuit court abused its discretion by denying Nathans' motion for recusal.

We shall answer the first question in the negative and hold that there was insufficient evidence to support the circuit court's conclusion that the Property was physically located within the relevant area. In light of this holding, we shall not address the second and third questions. Because this case will be remanded to the circuit court, we shall address Nathans' motion for recusal and, as we shall explain, find no abuse of discretion by the circuit court in denying the motion.

## BACKGROUND

Details relating to the origins of Ocean City are critically important to our consideration of the issues in this appeal. On July 28, 1876, Stephen Tabor[1] conveyed a parcel of land to certain trustees for the establishment of a "sea-side summer resort." The deed[2] (the "1876 Deed") described the parcel conveyed as follows:

> Fifty acres of the said tract have with my acquiescence and approval been laid off into a town, with lots, streets, and avenues, and is called and known as Ocean City, a description of which will appear by reference to the plat filed with and as a part of this deed, the lots being designated by number and the streets and avenues by the names on said plat; which said fifty acres are described as follows, to wit: Beginning at a post set in the surf bank of the Beach opposite Hammock Point six poles from low water mark, said post bearing from the south

---

[1] Mr. Tabor's name has also been spelled "Taber." *See*, *e.g.*, *Mayor and City Council of Ocean City v. Taber*, 279 Md. 115, 117 (1977). The name was spelled "Tabor" in this Court's opinion in *Windsor Resort Inc. v. Mayor & City Council of Ocean City*, 71 Md. App. 476, 480 (1987). We shall use the spelling "Tabor" in this opinion.

[2] We were presented with a photocopy of the nearly 150-year old deed, which is handwritten and extremely difficult to read. We have interpreted and transcribed the relevant portions of this deed to the best of our ability.

2

chimney of said Tabor main dwelling house on Hammock Point South seventy-six and one eighth degrees east (76 1/8) and from the north chimney of said Tabor's Marshall Farm dwelling house South forty seven and three eighths degrees east (47 3/8) and from the South Chimney of Thomas W. Tingle's dwelling house South Eighty-one and seven eighths degrees East (81 7/8), and from said post measuring as the magnetic needle [illegible] in the [illegible] Eighteen hundred and seventy-five, Seventy-six and one eighth degree West (76 1/8), fifty-eight poles to the waters of Sinepuxent Bay; [illegible] and with the waters of said Bay four and one fourth degree East (4 ¼) ninety-six and [illegible] pole; thence across the Beach South seventy six and eighth (76 1/8) [illegible] poles to the surf at low water mark . . . .

A plat was attached to the deed and referenced therein (the "Plat"). The Plat is reproduced *infra* in the Discussion section of this Opinion.

The Town of Ocean City was incorporated in 1880. 1880 Md. Laws ch. 209. The Act incorporating the Town of Ocean City described the boundaries of the town as follows:

> That the bounds and limits of the said town are as follows, to wit: Beginning at a point in Synepuxent Bay at or near the easternmost end of the Ocean City Bridge Company's bridge, and from thence by and with the waters of said bay in a southerly direction to the south side of the lands conveyed by "Stephen Faber"[3] to Granville Stokes, in a deed dated August the twenty-eight, eighteen hundred and seventy-nine, thence by and with said south side line in an easterly direction, and a continuation of the same across Atlantic avenue to the Atlantic Ocean, thence by and with the waters of the same in a northerly direction to the north side line of the lands conveyed by said Faber to Hillary R. Pitts, Benjamin Jones Taylor, and George W. Purnell, trustees, by deed dated July twenty-eight, eighteen hundred and seventy-six, thence by and with said north side line north seventy-six and one-eight degrees west, across the beach to Synepuxent Bay, then down by and with the waters of said bay in a southerly direction to the first beginning, at the

---

[3] The 1880 Laws of Maryland ch. refers to a conveyance from "Stephen Faber," which appears to be an incorrect transcription of "Stephen Tabor."

3

> easternmost end of the Ocean City Bridge Company's bridge; and the commissioners of said town, as hereinafter provided for, shall have a survey made by a competent surveyor of all the streets and avenues of said town, and shall have a stone placed at the north and south sides of the streets, bearing westerly from Atlantic avenue in said town, and at the east end thereof, at the intersection of said streets bearing westerly with Atlantic avenue.

On June 11, 1891, following Mr. Tabor's death, the executors of Mr. Tabor's estate conveyed additional property to the Sinepuxent Beach Company of Baltimore City.[4]

In 1911, Mr. Rapoport arrived in Ocean City. He built his first building on the Property in 1912. From 1912 until 1968, Mr. Rapoport personally operated various businesses on the Property. During 1969 and 1970, Mr. Rapoport leased the Property to Candy Kitchen. Since 1971, Mr. Rapoport and his successors have leased the Property to Dumser's Dairyland. Mr. Rapoport died in 1973.

Over the years, Mr. Rapoport and his successors made various modifications to their building on the Property. In 1954, Ocean City requested that Mr. Rapoport move his building east on the Property to allow for the widening of the Ocean City Boardwalk. Mr. Rapoport acquiesced. When he relocated the building, Mr. Rapoport constructed a full basement under the building. Mr. Rapoport sought and obtained a permit for the construction of the basement.

In 1966, Mr. Rapoport wished to add living quarters to his building by constructing a second floor, a project for which a permit was required. At that time, Mr. Rapoport and

---

[4] The Sinepuxent Beach Company recorded a plat that was included as an exhibit to Ocean City's counter-complaint but was not introduced by either party at trial.

Ocean City entered into an agreement to permit the construction of the second floor. The agreement further required Mr. Rapoport to pay property taxes.[5] The agreement provided that it would "be completely void fifty (50) years from the date hereof."[6] Since the signing of the 1966 Agreement, Mr. Rapoport and his successors have paid city, county, and state real property taxes for the Property.

Mr. Rapoport's only daughter died in 1999, after which the Property was conveyed by deed to Mr. Rapoport's granddaughters and great-grandchildren. In 2001, the Rapoport family began operating the Property under the name of Nathans, and in 2016 the Property was formally retitled in the name of Nathans.

---

[5] The parties characterize the 1966 Agreement quite differently from each other. Their varying interpretations of the 1966 Agreement are not relevant to the issues we shall address in this appeal.

[6] The 1966 Agreement provided that it would "continue for a term of twenty-five (25) years and may at that time be renewed for an additional period of twenty-five (25) years if, in the opinion of the then Mayor and City Council and their agent, the building is being properly maintained." The 1966 Agreement was renewed at the end of the first twenty-five years.

When Mona Strauss, Mr. Rapoport's granddaughter, approached her attorney about renewing the 1966 Agreement, her attorney discussed the possibility of pursuing an adverse possession claim. Mrs. Strauss did not want to "rock the boat" by bringing an adverse possession claim at that time because the Property was her "mother's only source of income, aside from Social Security."

In 1991, Ocean City demanded that the Rapoport family vacate the Property. The Rapoport family refused, and Ocean City sued. The Rapoport family was granted summary judgment in that case. *Mayor and City Council of Ocean City v. The Rapoport Trust*, Civil Action No. 92CV0232, Circuit Court for Worcester County. The 1991 litigation did not involve any issues relating to the ownership of the Property. The issue before the court in 1991 related to the renewal of the 1966 agreement after the initial 25-year period.

On May 17, 2016, Ocean City, by letter, demanded that Nathans vacate the Property. In response, Nathans filed a complaint to quiet title and for declaratory judgment. Nathans' complaint contained two counts. The first count sought to quiet title to the Property based upon a claim for adverse possession and was filed against the Sinepuxent Beach Company of Baltimore City, Inc., and any and all unknown persons having any legal or equitable right or claim of ownership to the Property. The second count sought a declaratory judgment that Ocean City had no rights or interest in the Property. The circuit court entered an order for service by publication and posting. Service by publication was effectuated through notices in The Daily Times on September 20, 2016, October 3, 2016, and October 10, 2016. The only response filed was by Ocean City. Ocean City filed both an answer and counter-complaint. The counter-complaint sought declaratory relief, injunctive relief, and accounting and disgorgement of profits.

The case was tried before the circuit court on April 18, 2017. Ocean City conceded that Nathans and its predecessors had been in actual, open, notorious, exclusive, and continuous possession of the Property since 1912. Ocean City contested Nathans' adverse possession claim on the sole basis that the Property was located within a dedicated and accepted public easement prior to Mr. Rapoport's acquisition of title via adverse possession in 1932.

On July 18, 2017, the circuit court ruled in favor of Ocean City and ordered Nathans to vacate the Property.[7] This timely appeal followed. Additional facts shall be discussed as necessitated by our discussion of the issues on appeal.

## DISCUSSION

## I.

The critical issue for our determination in this case is whether sufficient evidence exists in the record to support the circuit court's conclusion that the Property is located within a dedicated and accepted public easement.

"When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence." Md. Rule 8-131(c). This Court will "not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial judge to judge the credibility of the witnesses." *Id.* "Findings are not clearly erroneous if 'any competent material evidence exists in support of the trial court's factual findings[.]'" *Bontempo v. Lare*, 444 Md. 344, 363 (2015) (quoting *Webb v. Nowak*, 433 Md. 666, 678 (2013)). We consider questions of law *de novo*. *Id.* We "consider without deference . . . the lower court's decision regarding the legal interpretation of a deed only after the proper location of the disputed boundary line has been established by an adequate factual record." *Webb*, *supra*, 433 Md. at 677.

In an adverse possession case, "a claimant must show continuous possession of the property for 20 years in an actual, open, notorious, exclusive, and hostile manner, under

[7] This Court entered an order staying the circuit court's order pending this appeal.

claim of title or ownership." *Porter v. Schaffer*, 126 Md. App. 237, 276 (1999) (quotation omitted). Ocean City conceded at trial and in this appeal that Nathans had established continuous possession of the Property for over twenty years in an actual, open, notorious, exclusive, and hostile manner, under claim of title or ownership.

In addition, Nathans put forth evidence of the location of the Property as well as evidence of the record title holder. George Young testified on behalf of Nathans as an expert in the field of professional land surveying. He performed a boundary line survey of the Property and identified the physical location of the building. Mr. Young testified as follows:

> [COUNSEL FOR NATHANS]: Mr. Young, do you have an opinion within a reasonable degree of certainty and probability in the field of professional land surveying as to the physical location of the Nathans Associates property located at []601 South Atlantic Avenue in Ocean City?
>
> [MR. YOUNG]: Yes, I do.
>
> [COUNSEL FOR NATHANS]: And what is that opinion, sir?
>
> [MR. YOUNG]: Located as shown on our plat.
>
> * * *
>
> [COUNSEL FOR NATHANS]: Mr. Young, I'm just handing you the blowup of the plat which has been mounted on the board. And it's your opinion that the location of the Nathans Associates property is as indicated by the boundary description, with the metes and bounds descriptions and calls indicating the four property lines of the property?
>
> [MR. YOUNG]: Yes, that's my professional opinion.

The plat was introduced into evidence. On cross-examination, Mr. Young explained that his task was to establish the "physical location of the building."

8

Nathans also presented expert testimony from title abstractor Cynthia Todd. After describing the process she undertook to research the title of the Property, Ms. Todd testified as follows:

> [COUNSEL FOR NATHANS]: Based on your title abstract of this property, do you have an opinion within a reasonable degree of certainty and probability within the field of title abstracting as to who owns record title to the property titled in the name of Nathans Associates and located at 601 South Atlantic Avenue?
>
> [MS. TODD]: Correct. Yes, I do.
>
> [COUNSEL FOR NATHANS]: And what is that opinion?
>
> [MS. TODD]: The owner, fee simple owner, is Sinepuxent Beach Company of Baltimore City.[8]

Ocean City's sole defense to Nathans' adverse possession claim was that Property could not be adversely possessed because it was within a public easement. In order for the Property to be within a public easement, it must be located within the area of the parcel designated as Atlantic Avenue that was conveyed by the 1876 Deed discussed *supra*. If the Property is located north of the original southern boundary of the Town of Ocean City (and south of the original northern boundary), title cannot be obtained via adverse possession because the Property would be located within the Atlantic Avenue public easement.[9] If the Property is located outside of the original boundaries of Ocean City, title

---

[8] At trial, no one asserted that Ocean City was a fee simple owner of the Property. Instead, Ocean City asserted an interest in the Property through the public easement.

[9] The parties do not dispute that the Property is located within Atlantic Avenue. They dispute whether the Property is located within the portion of Atlantic Avenue that lies within the original boundaries of the Town of Ocean City. The portion of Atlantic Avenue within the original Town is a dedicated and accepted public easement. The portion

9

to the Property can be obtained via adverse possession because it is not within the Atlantic Avenue public easement.

The burden is upon Ocean City to establish the location of the Property within the parcel conveyed by the 1876 Deed. *Porter*, *supra*, 126 Md. App. at 261-62 ("Where a defendant, in an action to quiet title, substantially asserts and relies upon a fact as an affirmative issue, he must establish such fact.").[10] The circuit court determined that Ocean City presented sufficient evidence to establish that the Property was part of the parcel conveyed in 1876, and, therefore, that title to the Property could not be obtained via adverse possession because the Property is located within a dedicated and accepted public easement.

The parties do not dispute that a dedicated and accepted public easement was created on Atlantic Avenue when the parcel was conveyed in 1876 and the Town of Ocean City was subsequently created in 1880. *See Windsor Resort Inc. v. Mayor & City Council of Ocean City*, 71 Md. App. 476, 487 (1987) ("There can be no serious dispute that that portion of Atlantic Avenue which lies within the original boundaries of the Town of Ocean City was accepted by the General Assembly on behalf of Ocean City as a public roadway."). The parties dispute whether the evidence sufficiently establishes that the

---

of Atlantic Avenue south of the original Town boundaries is not within the public easement.

[10] At trial, the circuit court recognized that Ocean City bore the burden to prove that Ocean City "has, if not fee simple right, an easement underneath this building or a portion of it."

10

Property was located within the relevant area.  We must, therefore, carefully examine the evidence presented before the trial court in order to determine whether sufficient evidence supports the trial court's conclusion.

The 1876 Deed and accompanying Plat is the only evidence that was introduced at trial to show the location of the dedication of Atlantic Avenue. The Plat is reproduced below:[11]



[11] We have rotated the Plat ninety degrees with North at the top of the page.

An aerial photograph of the Property and the surrounding area[12] was introduced into evidence at trial and is reproduced below:



[12] This aerial photograph represents a portion of the area depicted in the Plat on the prior page. The parking lot on the right side of this photo is surrounded by the beach on its north and east sides and by the Ocean City Inlet to its south. The Atlantic Ocean is located to the east of the beach.

The Property is located adjacent to the parking lot at the end of a diagonal street and is circled in the aerial photograph.[13] We have added an arrow to the aerial photograph for the purposes of identifying the Property's location. The southernmost street appearing on the Plat is labeled "Division Street." The diagonal street in the aerial photograph is today known as "South Division Street."

The circuit court described its conclusions as to the Plat and aerial photo as follows:

> The plat attached to the Tabor deed at issue here clearly shows Atlantic Avenue extending to the Atlantic Ocean. It also clearly shows South Division Street extended to the Atlantic Ocean and indicates, clearly, that the middle of South Division Street is the southern boundary of the property contained within the deed's description. Therefore, the practical location of the easement is established by the plat -- from the westerly line of Atlantic Avenue as shown on the plat to the easterly line of Atlantic Avenue (the Atlantic Ocean) and on the south by the middle of South [Division] Street.[14]
>
> Plaintiff's Exhibit 2 [the aerial photo] indicates the Rapoport property (encircled in red by Nathans' attorneys) as being within that boundary of Atlantic Avenue as it then existed and now exists . . . Thus the location of Nathans' structure is established within Atlantic Avenue by the Plaintiff/Counter-Defendant's own exhibit No. 2.

(Original footnote omitted.)

---

[13] The transcript suggests that this annotation may have been made by the circuit court. The circuit court indicated in its memorandum opinion that, in the court's recollection, "the red mark encircling the building was actually affixed by Nathans' attorney."

[14] Here, the circuit court mistakenly referred to "South First Street," but the context of the opinion and trial transcripts strongly suggest that the court intended to refer to South Division Street.

14

We agree with the circuit court that the aerial photograph establishes that the Property is located north of the center of South Division Street as the street is located **today**. As we shall explain, however, the evidence is, in our view, insufficient to establish that the Property is located **north of Division Street as indicated on the 1876 Plat**. Simply put, this case is not about the location of Atlantic Avenue and South Division Street as they exist today. As we shall explain, there is no evidentiary support in the record for the key analytical step: connecting the plat depicting streets in 1876 and the on-the-ground location of streets in the City of Ocean City today.

The *only* basis for the circuit court's conclusion as to the location of the Property in connection to the 1876 Deed was the Deed itself. Indeed, it very well may be that the "Division Street" marked on the Plat is in an identical location to the "South Division Street" in Ocean City today. In that event, the Property would, at least in part, be located within the dedicated and accepted public easement. The question for our consideration, however, is not whether it appears likely from a common sense perspective that modern day South Division Street is identical to 1876 Division Street. Our question is whether sufficient evidence was produced by Ocean City to establish this fact.

At trial, counsel for Ocean City proffered that it would "introduce that Mr. Rapoport constructed lies totally within the boundaries evidence . . . through Terry McGean -- that the building -- or the land under the building of the original Town of Ocean City plat." When Mr. McGean was called as a witness, however, he was precluded from testifying about the location of the original southern boundary of Ocean City as compared to the actual streets on the ground today. Mr. McGean, a civil engineer by training, was called

15

by Ocean City as a witness in his professional capacity as city engineer for the City of Ocean City.

Counsel for Nathans specifically asked the court to preclude Mr. McGean from testifying to the actual location of points on the ground, arguing that "[t]o testify to points on the ground in the State of Maryland, you, by statute, by law, have to be a professional land surveyor or a professional property line surveyor." The circuit court agreed with Nathans, explaining that Mr. McGean, as the city engineer, was

> qualified not to testify as to where on a particular plat some property is, but where, as an engineer, he considers the street to be and the structures at issue here to be. I'm going to allow him to testify in that limited purpose, but not to testify as to any legal aspect of where Atlantic Avenue may be or where that building may be. So he may testify, but he's limited. I'm not going to permit him to get into surveying questions . . . .

During Mr. McGean's testimony, counsel for Ocean City inquired about a survey plat that had been prepared at some point prior.[15] For reference, the survey plat is reproduced below:

---

[15] There was no testimony as to when, for what purpose, or under what circumstances this plat was prepared.

16



Mr. McGean testified that the plat had been prepared by a surveyor named Norman R. Jones. Mr. McGean further testified that this survey plat was part of the records and documents that he keeps as city engineer. The court, however, refused to allow Mr. McGean to testify as to the meaning or accuracy of the line:

> [COUNSEL FOR OCEAN CITY]: Okay. In looking at this survey plat, there appears to be a line that runs in a west-to-east direction down South Division Street to Atlantic Avenue. And there's a legend on the plat that says south property line of original Ocean City.
>
> [COUNSEL FOR NATHANS]: Objection.

17

[COUNSEL FOR OCEAN CITY]: Would you explain to the court what your knowledge is of that line and why it's there?

[COUNSEL FOR NATHANS]: Objection, Your Honor.

THE COURT: Objection sustained.

* * *

[COUNSEL FOR OCEAN CITY]: . . . As a result of this case, did you have occasion to go up on Atlantic Avenue and observe the Rapoport building vis-à-vis this plat?

[MR. MCGEAN]: Yes, I did.

[COUNSEL FOR OCEAN CITY]: And what did you observe?

[COUNSEL FOR NATHANS]: Objection.

THE COURT: It's not objectionable yet.

[COUNSEL FOR NATHANS]: Okay.

THE COURT: I'll overrule the objections. Just -- what did you observe? He can say what he observed. He could have observed Thrasher's French Fries. He could have observed the men's room. He could have observed any number of things. So overrule your objection at this point. You may ask whatever you -- what did you observe? That was the question to you. You walked up there. What did you observe?

[MR. MCGEAN]: I observed the location of the Rapoport building.

[COUNSEL FOR NATHANS]: Objection and move to strike.

THE COURT: An eighteen-year-old child can walk up there and observe the location of the Rapoport building, so I'll overrule your objection. He may be getting to an objection. He's not there yet.

[COUNSEL FOR NATHANS]: Okay.

THE COURT: He observed the location of the Rapoport building.

18

[MR MCGEAN]: I observed the location of the Rapoport building in relation to the physical location of the street and sidewalks.

[COUNSEL FOR NATHANS]: Objection.

THE COURT: He can still observe that, so I'm going to overrule the objection. He's talking about the physical location of the street, not to the surveyed location, but to the physical location.

[COUNSEL FOR OCEAN CITY]: From your observation were you able to determine whether the building was south or north of the property line drawn by Mr. Jones that says south property line of original Ocean City?

[COUNSEL FOR NATHANS]: Objection. He's laid absolutely no foundation for that.

THE COURT: Well, he can't testify as to whether that particular line is accurate or not accurate.

* * *

[COUNSEL FOR OCEAN CITY]: From your observation does the building lie north of the line drawn by the professional land surveyor or south of that line?

[COUNSEL FOR NATHANS]: Objection.

THE COURT: Are you talking about the line down South Division Street?

[COUNSEL FOR OCEAN CITY]: Yes.

* * *

THE COURT: I'm going to overrule the objection and let him testify as to what his eyes see.

[COUNSEL FOR OCEAN CITY]: Thank you.

[MR. MCGEAN]: The building is to the north of the line.

19

Critically, Ocean City did not call, at any time, a licensed surveyor or any other expert witness who could have testified as to the original boundaries of Ocean City as established by the 1876 Deed or interpreted the Plat in relationship to the Property's actual location on the ground and the streets in existence today.[16] Moreover, there was no expert testimony that established the southern boundary line of the 1876 Deed, as depicted on the survey plat, *supra*. "An integral aspect of establishing . . . title to real property is proving its on-the-ground location." *Porter*, *supra*, 126 Md. App. at 265.[17] In our view, the 1876 Deed and accompanying Plat are not sufficient to support the circuit court's conclusion absent some additional evidence supporting Ocean City's interpretation of the Deed. Indeed, in an appeal of a previous adverse possession case involving the same documents, we characterized the 1876 Deed and Plat as "almost completely illegible," observing as follows:

> The copy of the 1876 deed and plat that were filed as an exhibit is a photocopy of a handwritten deed and hand drawn plat so reduced in size as to be virtually unintelligible . . . Needless to

---

[16] Nathans presented testimony from a licensed surveyor as to the boundary of the Property. Nathans' expert surveyor did not testify as to the location of the dedication set forth in the 1876 Deed or the location of the Property in relation thereto.

[17] *Porter* involved an action by a landowner to quiet title to unimproved tracts of woodland. The circuit court ruled in favor of the landowner; a claimant to the property appealed. We discussed the importance of establishing on-the-ground location in the context of assessing the claimant's record title claims. In doing so, we looked to out-of-state authority, including the North Carolina case of *Chappell v. Donnelly*, 439 S.E.2d 802 (1994). We observed that the North Carolina court had "reasoned that testimony of a surveyor as to the location of . . . boundaries on the ground is necessary because '[a]s to the identity of the land . . . a deed seldom, if ever, proves itself.'" *Porter*, 126 Md. App. at 266 (quoting *Chappell*, *supra*, 439 S.E.2d at 805-06) (internal quotations in *Chappell* omitted).

say, the reproductions of these documents in the printed record extract are no better than the exhibits themselves.

*Windsor Resort Inc. v. Mayor & City Council of Ocean City*, 71 Md. App. 476, 479 n.1 (1987).[18]  The exact same can be said of the critical documents in the present case.

This case presents unusual challenges inherent in the interpretation of a nearly 150-year old deed and plat.  Notably, the circuit court was presented with no evidence to assist in the interpretation of the plat vis-à-vis the actual location of various streets and buildings in modern-day Ocean City.  Further, we cannot determine where the original southern boundary of the Town of Ocean City was located in relation to modern-day Division Street.  This is the critical analytical step for which expert testimony was required.  We hold, therefore, based upon the unique facts and circumstances of this particular case, that additional evidence was required to close this analytical gap.[19]  We further hold,

---

[18] Both parties discuss *Windsor* at length in their briefs.  *Windsor* involved an adverse possession claim for real property located 162 feet from and on the same side of Atlantic Avenue as the Property at issue in this case.  This Court held that the appellants had successfully adversely possessed the property in *Windsor*.  71 Md. App. at 488.  *Windsor* addressed issues relating to dedication and subsequent acceptance of a public easement.  We do not discuss these issues in this appeal in light of our holding that Ocean City failed to present sufficient evidence to locate the Property within the area of the dedicated and accepted public easement.

[19] In so holding, we do not suggest that expert testimony is always required to establish the on-the-ground location of property described in a deed or set forth on a plat.  Indeed, in many cases the deed and plat may describe the property sufficiently to allow a court to interpret it.  In this case, however, due to the specific circumstances of the documents at issue in this case, as well as the amount of time that has passed and subsequent development that has occurred in the intervening 142 years since the Deed was prepared, additional evidence was required to prove the Property's on-the-ground location vis-à-vis the Deed and Plat.

21

therefore, that Ocean City failed to present sufficient evidence to support the circuit court's conclusion that the Property is located within the boundaries of the dedicated and accepted public easement of Atlantic Avenue.[20]

## II.

Because this case will be remanded to the circuit court for the limited purpose of issuing an order consistent with this opinion, we shall address Nathans' assertion that the circuit court judge abused his discretion by denying Nathans' recusal motion. *See Surratt v. Prince George's Cnty.*, 320 Md. 439, 465, 578 A.2d 745 (1990) ("When bias, prejudice or lack of impartiality is alleged, the decision is a discretionary one, unless the basis asserted is grounds for mandatory recusal."); *Scott v. State*, 175 Md. App. 130, 150 (2007) (explaining that this Court reviews a trial judge's decision on a motion to recuse for abuse of discretion). We have explained:

> A party attempting to demonstrate "that a judge is not impartial or disinterested has a high burden to meet." *Scott* [*v. State*], 110 Md. App. [464,] 486, 677 A.2d 1078 [1996]. "This is so because there is a strong presumption in Maryland, and elsewhere, that judges are impartial participants in the legal process, whose duty to preside when qualified is as strong as their duty to refrain from presiding when not qualified." *Jefferson-El* [*v. State*], 330 Md. [99,] 107, 622 A.2d 737 [1993] (citations omitted).
>
> > To overcome the presumption of impartiality, the party requesting recusal must prove that the trial judge has "a personal bias or prejudice" concerning him or "personal knowledge of disputed evidentiary facts concerning the

---

[20]Although we need not address the other issues relating to the dedication and acceptance of the public easement and Ocean City's alleged abandonment of any claim to the Property, we observe that the circuit court carefully considered these issues.

22

proceedings." *Boyd* [*v. State*, 321 Md. 69, 80, 581 A.2d 1 (1990)]. Only bias, prejudice, or knowledge derived from an extrajudicial source is "personal." Where knowledge is acquired in a judicial setting, or an opinion arguably expressing bias is formed on the basis of information "acquired from evidence presented in the course of judicial proceedings before him," neither that knowledge nor that opinion qualifies as "personal." Boyd, 321 Md. at 77, 581 A.2d 1 (quoting *Craven v. U.S.*, 22 F.2d 605, 607-08 (1st Cir.1927); [*Doering v. Fader*, 316 Md. 351, 356, 558 A.2d 733 (1989) ].

*Id.* at 107, 578 A.2d 745, 330 Md. 99, 622 A.2d 737 (some citations omitted).

A party attempting to demonstrate that a judge does not have the appearance of disinterestedness or impartiality carries a "slightly lesser burden." *Scott*, 110 Md. App. at 487, 677 A.2d 1078. "Appearance of disinterestedness or impartiality is determined by 'examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge.'" *Id.* at 487, 677 A.2d 1078 (quoting *Jefferson-El*, 330 Md. at 108, 622 A.2d 737 (citing *Boyd v. State*, 321 Md. 69, 86, 581 A.2d 1 (1990)).

*Chapman* v. *State*, 115 Md. App. 626, 631-32 (1997).

Nathans offers multiple reasons why it believes Judge Cathell should have granted Nathans' motion for recusal. Specifically, Nathans points to the following examples of alleged inappropriate conduct:

- Judge Cathell's references throughout the trial and in his memorandum opinion to his own personal knowledge of Ocean City's history and geography.

- Judge Cathell informing the parties before opening statements that he "went down there and looked at [the Property] yesterday."

23

- Judge Cathell's history as Ocean City's attorney, having "personally litigated another attempt by Ocean City to improperly take property located on the Boardwalk in the case of *Mayor and City Council of Ocean City v. Taber*, 279 Md. 115 (1977)."

- The introduction into evidence during trial of an October 5, 1972 letter from Judge Cathell, as city solicitor for Ocean City, to Mr. Rapoport on a matter involving the Rapoport Property and the 1966 Agreement.

Despite the various reasons cited by Nathans in support of its appellate argument as to the motion for recusal, we observe that Nathans' motion for recusal at trial was premised only upon the 1972 letter. On appeal, we will consider only the issue that triggered the motion for recusal at trial.[21]

During trial, Ocean City attempted to introduce into evidence the October 5, 1972 letter from then-city solicitor Cathell to Mr. Rapoport. Prior to viewing the substance of the letter, Judge Cathell immediately recognized the letter could render his involvement with this case inappropriate. The following exchange occurred:[22]

> THE COURT: Wait a minute. What was that date?
>
> THE WITNESS: October 5, 1972.
>
> THE COURT: Gentlemen, approach the bench. You say that letter is from the City Solicitor?
>
> THE WITNESS: Yes.

---

[21] A motion for recusal must be timely filed. *Surratt*, *supra*, 320 Md. at 468-69 ("To avoid disruption of a trial, or the possible withholding of a recusal motion as a weapon to use only the event of some unfavorable ruling, the motion generally should be filed as soon as the basis for it becomes known and relevant.").

[22] The witness during this exchange was title abstractor Virginia Curran.

24

(Whereupon, Counsel approached the bench and the following occurred:)

THE COURT:  Gentlemen, in 1972, I was the city solicitor for Ocean City.

[COUNSEL FOR OCEAN CITY]:  I'm aware of that.

THE COURT:  I presume that letter is from me?

[COUNSEL FOR OCEAN CITY]:  Yes.

\* \* \*

THE COURT:  . . .  I'm trying to figure out whether I can stay in the case or not.  If I'm writing a letter on behalf of the City of Ocean City threatening Mr. Rapoport in 1972, I shouldn't be hearing the case.

The circuit court thereafter took a brief recess to review the letter, which provided as follows:

 [O]n behalf of the Mayor & City Council, please be advised that they have approved an awning for your business as follows:

A five foot maximum extension from the existing building on the north and south sides only is allowed.  This awning is allowed only at the pleasure of the Mayor and Council and the Mayor and Council reserve the right to remove it at any time.  The granting of this awning approv[al] is not to operate in anyway as an extension of the area covered in the 1966 agreement with the Town.

After reviewing the letter, Judge Cathell asked the parties their positions on him continuing to preside over the case.  Judge Cathell explained that he was "not saying in advance whether I will recuse myself, if anybody wants me to, or not."  Judge Cathell further explained that he had reviewed the documentation associated with this case prior to trial and he "saw this letter nowhere."  Judge Cathell elaborated:

25

> When [then-administrative] Judge Groton asked me if I would
> take this case, he checked to made sure that I wasn't involved
> in the 1966 agreement, and he said I wasn't. I said I wasn't.
> And I have no recollection of that letter, and I just saw it. It's
> an innocuous letter. It merely approves the extension of an
> awning and says that the 1966 agreement is not to be affected
> by that letter, whatever it is.

Counsel for Nathans subsequently moved for Judge Cathell's recusal. Judge Cathell denied the motion, explaining: "If the letter directly related to what I perceive to be any of the important issues in this case, that would be one thing, but it was merely me conveying a decision of the Mayor and City Council . . . . So I'm going to decline to recuse myself."

In our view, Judge Cathell carefully considered the substance of the 1972 letter when evaluating Nathans' recusal motion. Furthermore, Judge Cathell took into consideration the late stage of litigation at which the motion to recuse arose, explaining that the case "may not get back on the docket for another year or two" if he were to recuse himself. We agree with Judge Cathell's characterization of the letter as "innocuous." Judge Cathell's prior involvement with respect to the 1972 letter in no way affected his ability to fairly consider the issues in the case, nor did it cause an appearance of impropriety. Furthermore, Judge Cathell's involvement did not render him subject to disqualification pursuant to Maryland Rule 18-102.11. *See also Sharp v. Howard County*, 327 Md. 17, 30 (1992) (explaining that "[w]hen a judge has appeared as counsel in an earlier stage of the same adversarial proceeding, there is no question that the judge has advocated the client's cause, and recusal is automatic because of the danger of an appearance of partiality," but "[w]hen a judge has given legal advice, or performed legal work in a nonadversarial setting, recusal is required only if the underlying purpose of the

26

advice or work was to achieve the goal that is at issue in the later proceeding before the judge."). Accordingly, we hold that the circuit court did not abuse its discretion by denying Nathans' motion for recusal.

**JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY REVERSED; COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF OCEAN CITY. CASE REMANDED FOR ENTRY OF AN ORDER CONSISTENT WITH THIS OPINION.**